STATE, EX REL. SAMUEL E. RENNER, v. MICHAEL B. HOLMES ET AL.

Argued February 19, 1902—Decided June 9, 1902.

The act to reorganize boards of chosen freeholders, approved March 6th, 1900, is rendered special, and, therefore, unconstitutional by the requirement, that proceedings for its adoption in any county shall be initiated by the existing board of chosen freeholders on or before March 28th, 1900.

On *quo warranto.* On demurrer to plea.

Before Justices DIXON, HENDRICKSON and PITNEY.

For the state, *J. Emil Walscheid.*

For the defendants, *John Griffin.*

The opinion of the court was delivered by

DIXON, J.   Prior to December 1st, 1900, the board of chosen freeholders in Hudson county was composed of thirty members, each elected by the voters of a subdivision of the county, under the acts of May 16th, 1894 (*Pamph. L., p.* 355), and March 22d, 1899.  *Pamph. L., p.* 203.   On March 6th, 1900, the legislature passed "An act to reorganize boards of chosen freeholders" (*Pamph. L., p.* 30), enacting, that on and after the first Monday in December, 1900, such boards should consist of nine members, to be elected by the voters of the entire county, but providing that the act should not be operative in any county unless the existing board of chosen freeholders of the county should, on or before March 28th, 1900, resolve to submit the question of the adoption of the act to the voters of the county at the next regular election, and on such submission the voters should accept the act.

In a *quo warranto* information the attorney-general alleges that in Hudson county the act of 1900 was accepted in accordance with its terms, and thereupon nine persons were chosen in November, 1900, to constitute the board of chosen freeholders for two years; that those persons have assumed the privileges and franchises of such a board and are unlawfully usurping the same, and he prays due process of law against them.

This charge of usurpation rests upon the contention that the act of 1900 violates the clause of the constitution which forbids the passage of local or special laws to regulate the internal affairs of counties, because it is in effect and substance rendered local and special by the provisions limiting the power of counties to accept it as above set forth.   In support of this contention the decisions in *De Hart* v. *Atlantic City,* 34 *Vroom* 223; *Christie* v. *Bayonne,* 35 *Id.* 191, and *Ross* v. *Passaic City, Id.* 488, are cited.  In these decisions, as well as in several others (*Pierson* v. *O'Connor,* 25 *Vroom* 36; *Stahl* v. *Trenton, Id.* 444; *Bennett* v. *Trenton,* 26 *Id.* 72), the statutes were condemned because the classification attempted by the legislature was defeated by a limitation in time that excluded

from the operation of the laws individuals which possessed, or in the natural course of things would possess, all the substantial elements of a constitutional classification.

In reply to this contention the defendants urge that no such ground of invalidity can be found in the present statute, because all existing counties have the same right of acceptance, and the court cannot assume that any other county will ever be created; and hence all counties that now do, or within judicial contemplation ever will, exist, are placed on the same footing. To this discriminating argument is added a reference to the case, *In re Cleveland,* 23 *Vroom* 188, where the court expressly held that the limiting clause did not invalidate the statute, and also to the cases, *Freeholders of Essex* v. *Essex Park Commission,* 33 *Id.* 376, and *Rimback* v. *Essex Park Commission, Id.* 494, where statutes containing a limiting clause were sustained without noticing the limitation.

The statutes under consideration in the cases thus referred to have features clearly distinguishing them from that now in hand. In Cleveland's case the statute (*Gen. Stat., p.* 729, § 28) expressly declared that if, for any reason, any section or provision of the act should be held unconstitutional or invalid, the same should not affect any other section or provision, and the court, finding the limitation in a distinct clause, laid stress on this saving enactment to sustain the main purposes of the law. In the Park Commission cases the statutes (*Pamph. L.* 1895, *p.* 169, § 20; *Id.* 1898, *p.* 19, § 2) required the proper officers of every county containing a population of more than two hundred thousand to submit the question of accepting or rejecting the act to the legal voters of the county, and the only limitation appearing was that the submission should take place at the next election. In construing these acts with a due regard to the purpose of the legislature, courts would not be likely to hold that the failure of the county officers to submit the question at the "next election" could deprive the people of all right to accept the benefits of the law, and hence would probably deem the provision for submission at the "next election" directory only, designed to se-

cure prompt submission, but not to limit the right of acceptance. Applying the same liberality of construction in the case of counties not then possessing, but afterwards acquiring the necessary population, the courts, rather than defeat the act for want of due classification, would hold that those counties also were entitled to the right of acceptance, and that it was the duty of the officials to submit the matter to the voters at the "next election" after such counties had entered the designated class.

We must therefore see whether the terms of the present act will admit of the construction that the limitation is not so inseparable from the other provisions as to lead to the conclusion that the efficiency of these provisions was intended by the legislature to depend upon compliance with the limitation.

On this question the language of the act seems to compel a negative answer. It is: "On and after the first Monday in December, nineteen hundred, boards of chosen freeholders shall consist of nine members;" and the act is to "remain inoperative in any county unless and until it has been submitted to the voters thereof by the board of chosen freeholders of such county and shall have been accepted by such voters; the manner of such submission shall be as follows: the board of chosen freeholders in any county *may,* on or before the twenty-eighth day of March, nineteen hundred, adopt a resolution to submit the question of the adoption of the act to the voters of each municipal division of such county at the next regular election to be held in such municipality."

These clauses disclose a purpose to confide in the existing boards of chosen freeholders a discretion as to whether the act should be submitted to the voters, and to require that such discretion should end on March 28th, 1900—that is, twenty-two days after the passage of the act, and that the submission, if ordered, should take place with similar expedition. This act therefore cannot be supported on the ground expressly stated in Cleveland's case or on that impliedly assumed in the Park Commission cases. If supportable at all it must be for the reason that it affords to all counties the same opportunity of accepting or rejecting its provisions, and hence is general.

But on this point we think the enactment is illusive, and that, while there is an outward show of legislating for all counties, there is in reality legislation for only some counties.

So important a change as this act contemplates in the organization of the governing bodies of counties would never be adopted without a reasonable opportunity for discussion; and the time allowed for action by the board, and for subsequent action by the voters, could not afford or be intended by the legislature to afford such opportunity. The celerity required points to a predetermination in some county or counties to make the change proposed, and a willingness on the part of the legislature that such change should there be made, but that elsewhere no change should take place. Legislation of this sort seems calculated to thwart the purpose of the constitutional prohibition of special laws, for in order to secure the successful enactment of such laws it would only be necessary that the legislature should be informed of the sentiment in any particular locality, and then should pass a statute according to that sentiment, and providing for its acceptance in so short a time that no other locality could reasonably act in the matter. So far as practical results are involved, the act might as well expressly limit the right of acceptance to the voters of that locality alone. The inevitable effect of such legislation is to confer upon localities, which in constitutional view are alike, statutory powers as diverse as the temporary sentiments of the particular places.

We think the act of 1900 is special and therefore invalid.

But the defendants have pleaded to the information that although they were voted for throughout the county, yet each of them was a citizen of one of the subdivisions of the county which, under the earlier statutes, were entitled to be represented by one or more members in the county board, and in that subdivision was voted for and received the highest number of votes for member of the board. The attorney-general having demurred to this plea, the defendants insist that they have good title as members of the board, notwithstanding the unconstitutionality of the act of 1900.

The question thus raised need not be critically examined, for, conceding their individual right to membership in the board if the board could be legally organized, the difficulty remains that nine persons cannot organize a board which, according to law, consists of thirty members, and it is the franchises of such a board that the defendants collectively are charged with usurping.

On the pleadings this charge is not answered, and therefore judgment should be entered ousting the defendants from the franchises of the board of chosen freeholders of the county of Hudson.

While thus resting our decision on the shortness of the time allowed for deliberation, we do not mean to imply that a longer time would have removed the defect, for there is some reason in the proposition that if the legislature selects a group of places for the possible operation of a statute, and makes its actual operation in any member of the group conditional upon the expression therein of a sentiment favorable to the statute, such expression becomes a substantial element in the basis of classification, and the class must be kept open for the admission of any member of the group wherein the sentiment shall at any time be appropriately expressed. But so broad a proposition is not necessary for the present case.