CASE 42—PETITION ORDINARY—APRIL 13.

## Brown, &c v. Holland, &c.

## Campbell v. Dabney.

| 97 | 249 |
| 97 | 382 |

| 97 | 249 |
| f127 | 413 |

APPEALS FROM CHRISTIAN CIRCUIT COURT.

1. ELECTION OF COUNCILMEN BY WARDS.—Under section 160 of the Constitution, the General Assembly has power to provide as to cities of the fourth class, as it has done, that councilmen "shall be elected by a majority of the votes cast by the qualified voters of the wards for which they respectively stand," it not being necessary that they should be elected by the voters at large before it can be said they are "elected by the qualified voters of the city."

2. SAME.—The charter for cities of the fourth class recognizes the existence of wards in such cities, and in effect continues the ward divisions existing under old charters.

3. ELECTION OF MAYOR BY COUNCIL—DELEGATION BY LEGISLATURE OF ITS POWER TO MUNICIPAL CORPORATIONS.—While the general rule is that the Legislature can not deputize others to perform its governing functions, yet it may delegate to municipal and other public corporations some portion of its own powers for local purposes. Therefore, under section 160 of the Constitution, which provides that mayors of town of the fourth, fifth

Brown, &c v. Holland, &c.

and sixth classes "may be elected or appointed, as provided by
law," the Legislature has power to provide, as it has done as to
cities of the fourth class, that "the mayor may be selected by the
people or appointed by the council, as may be provided by ordi-
nance." Nor is this provision in violation of section 156 of the
Constitution, requiring the organization and powers of each
class of cities "to be defined and provided by general laws so
that all municipal corporations of the same class shall possess
the same powers and be subject to the same restrictions."

4. ELECTION NOT INVALIDATED BY CERTAIN IRREGULARITIES.—As the
Constitution permitted, and the act for the government of cities
of the fourth class required, the election of councilmen by the
voters of each ward, and the city council in the absence of any
specific directions by the General Assembly as to how these ward
elections were to be held, did all in its power to comply with the
Constitution and the act, both the council and the county judge
appointing the officers to hold the elections in the respective
wards as required by the charter, and the city clerk furnishing
the ballots under authority of the council upon the refusal of the
county clerk to do so, these irregularities did not invalidate the
election.

5. IN THESE ACTIONS TO PREVENT THE USURPATION OF THE OFFICES
OF MAYOR AND COUNCILMEN, in which the plaintiffs ask judg-
ment, placing them in possession of the offices which they re-
spectively claim, plaintiffs must recover upon the strength of
their own titles, and have no interest in the settlement of any
question which merely affects the titles of the defendants with-
out giving validity to their own titles.


J. I. LANDES, J. W. DOWNER AND JAMES BREATHITT FOR AP-
PELLANTS.


1. The only lawful method of choosing mayors of cities of the fourth
class (the city of Hopkinsville being one of that class) is pre-
scribed by the first clause of sec. 160 of the Constitution, which
is that of election "by the qualified voters" of such cities, and
the board of council of the city of Hopkinsville had no lawful
or constitutional power or authority to change or fix the method
"by ordinance," and require the mayor of Hopkinsville to be ap-
pointed by the board, and thus take from the people of the city
the constitutional right they had to elect their own mayor.
While the General Assembly has the power to provide, *by the en-
actment* of a law, a method of selecting or choosing mayors and
police judges in the cities of the fourth class, other than by the

qualified voters of such cities, yet in the absence of such a law *fixing a uniform method of choosing these officers in all cities of this class*, the method prescribed in the Constitution—election by the qualified voters of the cities—must prevail.

The power conferred upon the General Assembly to enact laws can not be delegated by that body to any other body or authority. (Cooley's Const. Limit., 117; Cooley on Taxation, 61-64; Dillon on Mun. Corp., secs. 60, 567, 618; State v. Young, 29 Minn., 474; People v. Nevada, 6 Cal., 143; *Ex parte* Wall., 48 Cal., 279, 313; Tilley v. Savannah, &c., R. Co., 5 Fed. Rep., 641; Cincinnati, &c., R. Co. v. Clinton Co., 1 Ohio St., 77; Hydes & Goose, Ass'ees, &c., v. Joyes, 4 Bush, 464; The Auditor v. Holland, &c., 14 Bush, 147; Commonwealth v. Weller, *Idem*, 218; Clarke, &c., v. Rogers, &c., 81 Ky., 48; Burnside v. Lincoln County Court, 86 Ky., 425; Slack, &c., v. Maysville, &c., R. Co., 13 B. M., 22.)

2. The only lawful method of choosing members of boards of council of cities of the fourth class is that of election "by the qualified voters" of such cities, as provided in sec. 160 of the Constitution, which means, *ex vi termini*, "the qualified voters" of such cities at large; and the provision of sec. 4 of the act for government of cities of the fourth class (chap. 241 of Session Acts of 1891-2-3, p. 1211), allowing, or requiring, members of boards of council of such cities, in any event, to be elected "by wards," is unconstitutional and void.

3. Whatever power the General Assembly may have under the Constitution to require or allow members of boards of council of cities of the fourth class to be elected by wards, in contradistinction to electing them by the "qualified voters" at large, the provisions of the old charter of the city of Hopkinsville, in force at the adoption of the present Constitution, by which the city was divided into wards, was repealed, or abrogated, under the operation of sec. 166 of the Constitution, when the act for the government of cities of the fourth class went into effect, that is, on the 28th day of June, 1893, and no wards have since that time been established in the city of Hopkinsville, and none were in existence at the November election, 1893.

4. All elective officers of all cities and towns in the Commonwealth were required, by sec. 167 of the Constitution to be elected at the "general election" in November, 1893, which was the "one election" for that year allowed by sec. 148 of the Constitution, and which means the election provided for by the act entitled, "An act to regulate elections in this Commonwealth," approved June 30, 1892 (chap. 65 of the Session Acts of 1891-2-3), and conducted by the election officers appointed by the county judges

Brown, &c v. Holland, &c.

under the said act, which act contained *sufficient* and *exclusive* provisions for the election of members of the boards of council of all cities of the fourth class at the November election, 1893. in the manner required by the Constitution.

R. T. PETREE, JOE McCARROLL, HUNTER WOOD, J. T. HAN-

BERY AND J. B. ALLENSWORTH FOR APPELLEES.

1. The legislature did not intend by the adoption of the charter of cities of the fourth class to repeal any act or ordinance by which any city of the fourth class had previously been divided into wards. (Ky. Stats., sec. 3490, subsec. 33.)
2. The charter of fourth class cities is in perfect harmony with sec. 156 of the Constitution.
3. Sec. 160 of the Constitution does not require the mayors and boards of council of all cities and towns in Kentucky to be elected by the qualified voters *at large* of such cities or towns.
4. Appellants, like plaintiffs in ejectment, must recover upon the strength of their own title, and not upon the weakness of their adversary's.
4. The law leaving to the legislative board of each town of the fourth class the right and power to determine by ordinance whether the mayor and police judge of such town should be elected by the people or by the members of the board of council is not unconstitutional. While the general rule is that the legislature can not delegate its general powers of legislation to any other body or authority, this rule has many exceptions. (Slack v. Maysville & Lexington R. Co., 13 B. M., 23; Sutherland on Statutory Construction, secs. 70-75.)

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

The questions involved in these appeals relate to the legality of the election of mayor and councilmen of the city of Hopkinsville, under the provisions of the constitution, and the act for the government of cities of the fourth class.

The action first named was brought by the appellants Brown and others to prevent the usurpation of the office of councilmen of the city named by the appellees Holland and others; the other was brought by the appel-

lant Campbell to prevent the usurpation of the office of mayor of that city by the appellee Dabney. In each case judgment was asked to place the appellants in possession of the offices which they respectively claimed. No objection is suggested against any of the parties on the score of qualification or eligibility. The appellants, Brown and others, were severally voted for by the qualified voters at large of the city, at the general election on the 7th day of November, 1893, held by the precinct officers appointed by the county court of Christian county, with ballots furnished by the county court clerk. There were four of these election precincts, and they embraced all the territory within the limits of the city and some outside of such limits.

The appellees, Holland and others, were voted for on the same day by the qualified voters of the wards of the city, of which there were seven, the voters of each ward voting for only one member of the council, and the election being held in each ward by officers appointed by the city council, and with ballots provided by the city clerk. The appellant Campbell was elected mayor by the qualified voters of the city at the same general election held at the four precincts; while the appellee Dabney was appointed mayor by the council on the first Tuesday in January, 1894, in pursuance of an ordinance of the council adopted on September 5, 1893, providing for such appointment.

It is contended by the appellants: First, that the only lawful method of choosing members of boards of council of cities of the fourth class—the city of Hopkinsville being one of that class—is that of election by the qualified voters of such cities as provided by section 160 of the constitution, which means, by force of the language used therein, election by the qualified voters *at large*; and that the provisions of section 4 of the act for the government of cities of

the fourth class (chap. 241, acts of 1891-2-3, p. 1211) allowing or requiring such members in any event to be elected *"by wards"* is unconstitutional and void.

Second, That however this may be, the provisions of the old charters by which these cities were divided into wards were repealed or abrogated under the operation of section 166 of the constitution, when the act for the government of cities of the fourth class went into effect, that is, on the 28th of June, 1893, and no wards have since that time been established in the city of Hopkinsville, and none were in existence at the November election, 1893.

Third, That elective offices in all cities and towns were required by section 167 of the constitution to be filled at the general election in November, 1893, which was the "one election" for that year allowed by section 148 of the constitution, and which was provided for by the general election law approved June 30, 1892 (chap. 65, acts 1891-2-3) and conducted by officers appointed by county judges with the official ballots furnished by the county court clerks.

Fourth, That the only lawful method of choosing mayors of cities of the fourth class is prescribed by the first clause of section 160 of the constitution, which is that of election by the qualified voters of such cities, and the board in this instance had no constitutional power to fix the method by "ordinance" and require the mayor to be appointed by the board. That the attempt by the General Assembly to delegate such power to the boards of councils of such cities is unauthorized by the constitution.

For the appellees it is contended, and was so held by the court below: First, that members of legislative boards of all cities, save those of the first and second classes, might be elected by the qualified voters thereof, voting by wards or at large, and in cities of the first and second classes such

members were to be elected by the qualified voters *at large* as expressly required by the constitution. That members of such boards in cities of the fourth class might therefore be elected by wards, or at large, as might be provided by the General Assembly.    That in pursuance of this construction of the constitution the General Assembly did provide that in such cities of the fourth class as were divided into wards, the members of such boards should "be elected by the qualified voters of the wards" for which they respectively stood, otherwise by the qualified voters of the city. That the division of the various cities in the Commonwealth into wards in so far as they were so divided was recognized by the constitution, and in no wise interfered with either by that instrument or by the laws enacted by the General Assembly for the government of such cities.    That in the city of Hopkinsville, being a city divided into wards, the "ward" election, at which the appellees were elected, was held in accordance with the provisions of the statute and the constitution, from which it follows that the appellants, Brown and others, were not legally elected.

Second, That under the provisions of section 160 of the constitution, mayors of cities of the fourth class might be appointed or elected, as provided by law; that by the act for the government of cities of that class, it was provided that the mayor might be elected by the people or appointed by the council, as provided by ordinance, and that such an ordinance was adopted, and the appellee Dabney appointed mayor in strict accordance with the provisions of the constitution, the act governing fourth class cities and the ordinance of the board on that subject. That the appellant Campbell was not so appointed, and is therefore not entitled to the office.

We shall consider the case of the councilmen first.    So

much of section 160 of the constitution as will be necessary
to notice in this connection is as follows: "The mayor or
chief executive, police judges, members of legislative
boards or councils of towns and cities, shall be elected by the
qualified voters thereof: *Provided*, the mayor or chief execu-
tive and police judges of the towns of the fourth, fifth and
sixth classes may be appointed or elected as provided by
law    *    *    *    *    When any city of the first or second
class is divided into wards or districts, members of legisla-
tive boards shall be elected at large by the qualified voters
of said city, but so selected that an equal proportion there-
of shall reside in each of the said wards or districts; but
when in any city of the first, second or third class, there
are two legislative boards, the less numerous shall be se-
lected from and elected by the voters at large of said city;
but other officers of towns or cities shall be elected by the
qualified voters therein or appointed by the local authori-
ties thereof, as the General Assembly may, by a general
law, provide.    *    *    *    "

Section 4 of the act for the government of cities of the
fourth class, approved June 28, 1893, and in force from that
date, is as follows: "The members of the board of council
shall be elected the first Tuesday after the first Monday in
November every two years; shall be residents of the wards
they represent, and shall be elected by a majority of the
votes cast by the qualified voters of the wards for which
they respectively stand: *Provided*, The city is divided into
wards, otherwise they shall be elected by a majority of the
votes cast by the qualified voters of the city, of which they
must be residents," etc.

In our search, therefore, to ascertain the meaning of the
words "shall be elected by the qualified voters thereof" in
section 160 *supra*, we are met with a legislative construc-

tion which authorizes an election of members of such boards by a majority of the votes cast by the qualified voters of the wards of such cities as may be divided into wards. The question is, therefore, is this legislative con-. struction so repugnant to the obvious meaning and intent of the provisions of the constitution as to require judicial condemnation?

In other words, when the constitution requires members of legislative boards of towns and cities to be elected by the qualified voters thereof, must they be elected by the voters at large before it can be said that they are elected by the qualified voters of the city? And when such members are elected by the qualified voters of the wards of a city can it be said that they are not elected by the qualified voters of the city?

In this connection, it is to be observed that the clause in question is followed by the proviso that the mayor and police judges of certain cities may be appointed or elected, and we are urged to draw the inference that the intent of the framers of the constitution was simply to declare that the offices of members of municipal boards should be elective and not appointive, the manner of the election, whether by wards or at large, not being particularly under consideration. It is also to be seen that another significant clause follows in which the words "at large" are used, and from which it is argued that the election provided for in the first clause, in which those words are omitted, might be held by the qualified voters of the city, voting either at large, or by wards.

The provision is: "When any city of the first or second class is divided into wards or districts, members of legislative boards shall be elected *at large* by the qualified voters of said city, but so selected that an equal proportion thereof

shall reside in each of the said wards or districts; but when in any city of the first, second or third class, there are two legislative boards, the less numerous shall be selected from and elected by the voters at large of said city."

If the clause, "members of legislative boards or councils of towns and cities shall be elected by the qualified voters thereof" can fairly mean only that they are to be so elected "at large," it is difficult to escape the conclusion that much useless repetition has been indulged in by the framers of the constitution. It can not be that solely for the purpose of providing that an equal proportion of the members should reside in each of the wards, it was found necessary to use the words "at large." Without these words, the clause, "but so selected that an equal proportion thereof shall reside in each of said wards or districts," conclusively negatives the idea of an election by wards, because an election by wards would necessarily require an equal proportion of members to reside therein, and the provision would be superfluous. The use of these words, "at large," in providing for elections in cities of the first and second classes, seems strongly to authorize, by implication at least, a different mode of election as to other towns and cities. They are seemingly used to emphasize the method to be adopted in elections of members in cities of the first and second classes, and distinguish it from that to be used in all other classes. Not that in other classes the method *must* be different, but that it *may* be. The use of the significant words in the one case and the omission of them in the other present the two methods in contradistinction, the one from the other.

Moreover, the language of the first clause does not in terms preclude an election by wards. The learned judge below aptly says in this connection: "Of this section (160) it

may be said generally that in speaking of the legislative boards, .it says 'members' of said boards shall be elected by the qualified voters of said city or town, using the plural number, 'members.' It does not say that each individual member shall be elected by the voters of the city, but that the members in the aggregate shall be so elected. Following this language literally, the members of said board in the aggregate have been so elected by the voters in the aggregate of said city. No single member has been elected by any other than the qualified voters of the city, and every qualified voter of the city has had an opportunity to vote for a member of said board of council." The debates in the convention conclusively sustain this construction.

The section as first reported by the committee having the matter in charge read thus: "The mayor or chief executive, police judges, members of legislative boards or councils and of school boards of towns and cities shall be elected by the qualified voters thereof. * * * * When any city or town is divided into wards or districts, members of legislative and of school boards shall be elected at large by the qualified voters of said town or city, but so selected," etc.

The distinguished chairman of the committee in deference to what he declared to be the demands of the smaller towns and cities, and for the reason that it secured to them the supremacy in governmental affairs of the more intelligent element in such cities and towns, amended the section in behalf of the committee, so that the second clause read as follows: "When any city *of the first or second class* is divided into wards or districts, members, etc., shall be elected at large," etc.

Of this amendment, a prominent delegate said: "I hope this amendment will pass. It applies to my town (*Hop-*

*kinsville*) which has been governed for twenty years by people who own but a small portion of the property, but we have at last got a ward system in the city by which property-owners are able to govern the town themselves. I hope you will adopt the amendment, because otherwise it would put us back under the control of the irresponsible rabble."

After reading the section as amended a distinguished member of the committee said: "Now, it does not take away from the legislature the power, by general laws, to regulate the mode in which the legislative boards of towns, *other than of the first and second class*, shall be arranged. If hereafter the legislature should want to provide a mode of representation in these towns by electing from the town at large, it could do so. This does not provide for one way or the other, but leaves it with the legislature, and does not interfere with these little towns, such as the one represented by the gentleman from Christian county, but is *simply applicable to cities of the first and second class.*" And the committee amendment appears to have been agreed to without division. (Debates, Constitutional Convention, vol. II., pp. 2905-6.)

However, if, as contended, the provisions of the old charter dividing the city into wards were repealed by the new charter or act for the government of cities of the fourth class, and the wards thus abrogated under the operation of the constitution, the law providing for ward elections is not to be applied, in which event the appellants, as they were elected "by a majority of the votes cast by the qualified voters of the city," are entitled to the offices.

The contention is that the "ward" law of January, 1890, dividing the city into seven wards, being an amendment of the old charter of the city, was abrogated and repealed

by the act for the government of cities of the fourth class,
adopted June 28, 1893.    That section 166 of the con-
stitution provided for a continuance in force of the acts of
incorporation of cities and towns and all amendments
thereto until such time as the General Assembly shall pro-
vide by general laws for the government thereof, and there-
fore, say counsel, "the date of the passage of any such act
for the government of any class of cities, is the limit of
the periods of existence of previously existing acts of incor-
poration and amendments thereto, of all cities belonging to
that class of municipalities." This argument seems to be
sound enough, but nevertheless if when the act for the
government of cities of the fourth class came to be adopted,
the existence of ward-divisions therein was recognized and
in effect continued, the conclusion that the wards thereof
are abolished or obliterated is erroneous. And it seems to
us that the act of June 28, 1893, does recognize the exist-
ence of wards in such cities, and in effect continues the
ward-divisions. Thus in sub-section 32 of section 9 it is
provided that "said board of council may change the boun-
dary line of any ward or wards of any city *now divided
into wards*, or hereafter divided into wards under the pro-
visions of this act," etc.

Other references to the division of such cities into wards
in the present tense are made in sections 3 and 4 of the act,
and while these references may possibly refer to some fu-
ture division into wards, we do not think such is the mean-
ing of the references. It seems absolutely inconsistent
that the legislature would grant the council the power to
change the boundary lines of wards in existence at the time
of the passage of the act, if upon its passage and by reason
thereof, those wards became obliterated.

By the ordinance of September 5, 1893, the boundaries

of the wards in Hopkinsville were changed and fixed defi-
nitely, and the succeeding election held therein accord-
ingly.

It is said, however, that the one election for each year,
provided for in section 148 of the constitution, was that of
the general election held by the officers required to be ap-
pointed in pursuance of the general election law. This is
doubtless true. The appellants, however, are not con-
cerned in the settlement of this question. If the appellees
were not elected in strict accordance with the requirements
of the general election law, that fact does not give validity
to the title of the appellants upon the strength of which
alone they can recover the office. They are concerned in
the determination of the questions whether the election
"by wards" was authorized by the constitution, and
whether the ward system was continued by the act of June
28, 1893, because, if not so authorized and continued, the
appellees were not only not elected, but the appellants
were. But if constitutional authority exists for the ward
elections, and such wards in fact existed, the appellants
claiming the offices of councilmen have no further interest
in the controversy.

So, also, we may say in this connection, the appellant
Campbell claiming the office of mayor is not interested in
the question whether or not the appellee Dabney was ap-
pointed by a board of councilmen, in all respects elected
in pursuance of the general election law.

The only question he is concerned about is whether the
appointive method for choosing a mayor, provided for in
the act for the government of cities of the fourth class, and
pursued in the selection of the appellee Dabney, was author-
ized by the constitution; for, if so, the appellant's election,

having been by a different method, is void. And this question we will now consider.

The language of the act is: "The mayor may be elected by the people or appointed by the council, as may be provided by ordinance." (Sec. 3, ch. 241, acts 91-2-3.)

The constitutional provision is that mayors of towns of the fourth, fifth and sixth classes "may be appointed or elected as provided by law." (Sec. 160.)

The contention is that the legislature can not delegate to the various boards of council the right to provide the manner in which the mayors of these cities may be selected, but must itself provide the manner. And, moreover, that such a delegation of power is in violation of section 156 of the constitution, requiring the organization and power of each class of cities "to be defined and provided by general laws, so that all municipal corporations of the same class shall possess the same power and be subject to the same restrictions."

The general rule that the legislature can not deputize others to perform its governing functions is well settled. (Cooley's Const. Lim., 6th ed., 137.)

It, however, "may delegate to municipal and other public corporations some portion of its own powers for local purposes, the general rule being that it may authorize others to do things which it might properly, yet can not understandingly or advantageously do itself." (19 Am. & Eng. Ency., 464, and cases there cited.)

In Thompson v. Floyd, 2 Jones L. (N. C.) 313, cited by Mr. Sutherland in his work on Statutory Construction (sec. 70), it is said: "Neither is it necessary for us to consider the general question whether the General Assembly can delegate any portion of its legislative functions to any man or set of men, acting either in an individual or corporate capacity.

That it may, has been too long settled and acquiesced in
by every department of the government and by the people,
to be now disputed or even discussed.   The taxing power
is, unquestionably, a legislative power, and one of the high-
est importance, and yet has, ever since the adoption of the
constitution, been partially delegated to the justices of
the county court, and to every incorporated city, town and
village throughout the State.   . . . The truth is, that in
the management of all the various and minute details
which a highly civilized and refined society requires, the
General Assembly must have, and are universally conceded
to have, the power to act by means of agents, which agents
may be either individuals or political bodies, most gener-
ally the latter.   Without such power the legislature would
be an unwieldy body, incapable of accomplishing one-half
the great purposes for which it was created."

In Slack v. Maysville & Lexington Railroad Company,
13 B. M., 1, it is said that the legislative will is ordinarily
enforced by the judiciary or the executive, or by both com-
bined.   "But the legislature is not restricted," says the
court, "to these agencies.   It may select or appoint others,
as is often done, when the object of the law is to accom-
plish local or individual purposes.   The agency generally
employed for applying the legislative will and the power of
the government to purposes merely local, has been that of
county courts for counties, and of trustees of towns or the
municipal authorities of cities for towns and cities, which,
to the extent of the powers permanently or temporarily
vested in them, and whether allowed a discretion or not,
do but carry into effect the legislative will and power."

In considering a different branch of this case, we have
seen a manifest purpose, on the part of the framers of the
constitution, to provide a local government best suited to

the needs and conditions of the cities and towns of the Commonwealth, and it would seem at least.to be in accord with that purpose if the legislative department of these cities and towns might be left free to adopt such method of choosing their chief executive as, in its judgment, would secure the best results.

Nor do we think that the provision for the election or appointment of this officer is in conflict with sec. 156 of the constitution, requiring the organization and powers of each class of cities and towns to be defined and provided for by general laws, and all municipal corporations to possess the same powers and be subject to the same restrictions.

It seems to us the organic structure of a city government with an appointed mayor is not one on that account different from that of a city government in which the mayor is elected by the qualified voters. As said by the learned judge below: "A mayor is equally a mayor with the same powers and subject to the same limitations whether chosen by a vote of the people of the city at large or, whether selected or chosen by the board of council," and certainly, it seems to us, the powers and the restrictions therein of all municipal corporations may be defined and provided for by general laws whether the office of mayor be filled in the one way or the other.

From what we have said it follows that the judgments below dismissing the petition of the appellants Brown and others, and of the appellant Campbell, are correct, whether or not the appellees are respectively entitled to hold their offices.

We have seen that the constitution permitted, and the act for the government of cities of the fourth class required, the election of councilmen by the voters of each ward, but by in-

advertence, as we suppose, there was no method pointed out
by the General Assembly how to hold these ward elections,
if the ward-limits did not correspond with the limits of the
general voting precincts as fixed by the county court.   This
has since been fully remedied.   (§3485 Ky. Stat.)   In the
absence of any specific directions on the subject, the council
did all in its power to comply with the constitution and the
act.   It appointed the officers to hold the election in the re-
spective wards as required by the charter.   The county
judge also appointed the same officers.   The county clerk
declining to furnish the ballots for the ward elections, the
city clerk did so under the authority of the council.   In all
other respects the election was conducted as required by
the general law.   We are of the opinion that the irregular-
ities indicated did not invalidate the election of the appel-
lees, and that they hold their respective offices as if elected
in strict conformity with the general election laws.

Wherefore the judgment in each of the cases is affirmed.
Judge Guffy dissenting.