CASE 41.—SUIT BY S. S. MOORE AND OTHERS AGAINST THE CITY OF GEORGETOWN.—December 31.

# Moore v. City of Georgetown

Appeal from Scott Circuit Court.

R. L. Stout, Circuit Judge.

From a judgment dismissing the petition the plaintiffs appeal—Affirmed.

1. Municipal Corporations—Fourth Class Cities—Division Into Wards—Power.—Ky. Stats., 1903, section 3484, relating to ·fourth class cities, provides that the legislative power shall be vested in the mayor, and not less than six nor more than twelve councilmen, as may be provided by ordinance, members of the council to be qualified voters in the city, resident of the ward for which they stand for at least six months prior to their election, if the city is divided into wards; and section 3485 declares that, if the city shall not be divided ·into wards, the councilmen shall be chosen from the voters of the city, and that any city not divided into wards may, not less than 60 days before any November election, be divided into not exceeding six wards, etc. Held, That such sections constituted· a proper exercise of the legislative power to authorize the division of cities of the fourth class into wards, and to provide for the election of councilmen from the respective wards.

2. Constitutional Law—Governmental Powers—Construction—Infringement of Legislature.—The city council of a city of the fourth class, being authorized by Ky. Stats., 1903, sections 3484, 3485, to divide the city into wards, and provide for the election of councilmen from their respective wards, and there being no constitutional or statutory provision requiring that such division be so made as to provide equal representation, the courts can not interfere with the exercise of the legislative power so conferred by invalidating an ordinance so dividing the city into wards as to cause unequal representation.

LLUWELLYN F. SINCLAIR for appellants.

The questions involvea in this case have never been before this court for determination in the past. It is not only a new question, but a very important one. 'Municipal government effects the happiness, peace, health, comfort and property interests of the people who live in cities more directly, than county, State, or National government, therefore, I repeat that the correct solution of the law on the subject in controversy here, is of great importance not only to the inhabitants of Georgetown, but to the people residing in cities throughout the State.

Let us examine for a moment the effect of this crdinance. It will appear from the record that the city of Georgetown contains 3,650 inhabitants and 1,015 voters. Wards 1 and 3 contain combined 1,710 inhabitants and 471 voters, while wards 2 and 4 have a population combined of 1,490 inhabitants and 544 voters. Dividing the population of the entire city by two and you have as a result 1,825 inhabitants, and by a similar division you will have 502 voters. Thus it will be seen that wards 1 and 3 have nearly one-half of the population and voters of the city, and vote as they may the people in these two wards are permitted to have but two representatives in the council under this ordinance, while a bare majority of the voters in wards 2 and 4 enables 223 voters to. control the municipal government of the city of Georgetown absolutely, for these two wards are given six members of the council, although they contain only a population slightly in excess when combined to that of the other two wards, and a small number of voters more than wards 1 and 3 contain. Such a system of government as it is demonstrated that this ordinance creates is not only arbitrary, unjust, but is also indefensible and inexcusable.

If I have not studied the subject amiss, government was established among men because moral virtue was not sufficient to govern the world. There is no other excuse for its existence, except that we mortals can not get on without it. It is not a thing to be admired apart from the purpose it serves. Society in its organized form is the State, and in any just system the sovereign will of the people should be permitted to control the instruments of government that the people through that State have created. That is the purpose and end of government as I understand it.

I submit to this court that this ordinance is void for the reasons presented, and ask that the decision of the lower court be reversed.

Moore v. City of Georgetown.

## AUTHORITIES CITED.

Websters' Works, vol. 6, 221-227; Parker v. State, book 18 L. R. A., 567; Houghton Co. Supervisors, v. Blacker, book 16, L. R. A., 432; Giddings v. Blacker, book 16 L. R. A., 402; State v. Cunningham, book 15 L. R. A., 561; Van Bokkelen v. Canaday, 73 N. C., 198; Websters Report on Apportionment, Cong. Rec., 1832; Baird v. Board Supr., 138 N. Y., 95; Ky. Stats., section 3485; Constitution of Ky., section 33; Constitution of Ky., section 116; Smith, Munic. Cor., vol. 1, 97; Hildreth v. Cincinnati, 3 Nisi Prius 127, 6 O. Dec. 196; Am. & Eng. Ency. of Law, vol. 20, 1155; Smith, Munic. Cor., vol. 1, 95; Smith, Munic. Cor., vol. 1, 525; Cooley, Con. Lim., 5th Ed., 243; Calder v. Bull, 3 Dallas U. S., 385; Story Case, cited Cooley, Con. Lim., 5th Ed., 198; Benson v. Mayor N. Y., 10 Barb., 223-224; Goshen v. Stonington, 4 Conn., 209-225; Cooley, Con. Lim., 5th Ed., 208-209,454,483,487; People v. Rice, book 16 L. R. A., 836; Constitution of Ky., section 2; Constitution of Ky., section 3; Constitution of Ky., section 145.

JAMES F. ASKEW and HAZELRIGG, CHENAULT & HAZELRIGG for appellees.

Having briefly stated the reasons why plaintiff's version of the law is not correct and believing that upon a re-study of the subject he will come to the same conclusion, we suggest that these plaintiffs are in no danger of suffering the imaginary ills created by the active imagination of them and their friends; that they still have a right to exercise the powers of the legislative department of the State before rushing into court and asking that the court take a hand in the internal government of the defendant city.

We have shown, we think, that this defendant city has a right to pass this ordinance. The plaintiff's brief is without index so that we can not, without great labor, go over the whole of it, but we will say that it is quite an eloquent production and that it lacks only two things to make it artistically perfect; one is the incorporation of the Declaration of the Independence and the other is the poem of the famous ride of Paul Revere.

Believing that the judgment ought to be affirmed, we so ask.

## AUTHORITIES CITED.

Brown v. Holland, 17 Ky. Law Rep., 149; Prouty v. Strover, 11 Kan., 235; People v. Rice, 135 N. Y., 473; Constitution of Ky.,

sections 156, 160; Ky. Stats., section 3485; People v. Carter, 16 L. R. A., 836.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This litigation involves the validity of an ordinance enacted by the board of council of Georgetown—a city of the fourth class—in January, 1905, dividing the city into four wards. It was assailed by appellants, plaintiffs below, upon the ground that it violated the fundamental principles of representative government, in that the population of the wards was grossly unequal, and the representation from the several wards in the council was not fairly distributed according to population. The lower court dismissed the petition, and the complainants appeal.

The Constitution divides the cities and towns of the Commonwealth into six classes, providing that "the organization and powers of each class shall be defined and provided for by general laws, so that all municipal corporations of the same class shall possess the same power and be subject to the same restrictions." In section 160: "When any city of the first or second class is divided into wards or districts, members of legislative boards shall be elected at large by the qualified voters of said city, but so selected that an equal proportion thereof shall reside in each of the said wards or districts; but when in any city of the first, second or third class, there are two legislative boards, the less numerous shall be selected from and elected by the voters at large of said city. But other officers of towns or cities shall be elected by the qualified voters therein or appointed by the local authorities thereof as the General Assembly may by general law provide." This is the only section of the Con-

stitution that in any way treats of the election of members of the legislative boards, and it will be observed that it is silent as to cities of the fourth or fifth classes and towns of the sixth class; the entire matter in these municipalities being left without limitation or restriction to the control and regulation of the legislative department of the State. The only statutory provision relating to the subject under consideration is found in section 3484, Ky. Stats., 1903, which is a part of the law governing fourth-class cities. There it is provided in part that "the legislative power shall be vested in a mayor, and not less than six nor more than twelve councilmen, as may be provided by ordinance. The members of the council shall be qualified voters in the city, resident of the ward from which they stand for at least six months prior to their election, if said city is divided into wards." And, further, in section 3485: "The members of the board of council and all other elective officers of cities of the fourth class shall be elected at the times and for the terms prescribed by the Constitution. The members of the board of council of each city shall be elected by the qualified voters of the wards for which they respectively stand, if the city is divided into wards; otherwise they shall be elected by the qualified voters of the city. * * * The board of council or board of trustees, as the case may be, of any city not divided into wards may, not less than sixty days before any November election held for the election of councilmen, divide the city into not exceeding six wards, which shall remain so constituted unless changed or abolished by future board of council." In Brown v. Holland, 97 Ky. 249, 30 S. W. 629, 17 Ky. Law Rep. 149, this court had under consideration a question involving the right

of the board of council in cities of the fourth class to divide the city into wards, and elect members of the board from the several wards in place of electing them from the city at large; and, after full investigation, it was held competent for the Legislature to authorize the division of cities of this class into wards and to provide for the election of councilmen from the respective wards. This ruling, supported as it is by sound reasoning, is in accordance with the legislative intent, and seems conclusive of the right of the council to divide cities of this class into wards and elect councilmen from them.

This leaves to be considered only the question whether or not the action of the council in dividing the city of Georgetown into wards, and allotting the number of councilmen to be elected from each ward, is subject to review by the courts, upon the theory that in the manner of its execution it violated a fundamental principle of equality and representative government. Cases of legislative apportionment that transgressed some constitutional provision have been frequently considered by courts of last resort; the latest being that of Ragland v. Anderson, 125 Ky. 141, 100 S. W. 865, 30 Ky. Law Rep. 1199, in which this court held the act of 1906, apportioning the State into legislative districts, invalid because in violation of that section of the Constitution directing that the State should be divided into senatorial and representative districts "as nearly equal in population as may be." If there was constitutional or legislative expression upon the subject indicating a purpose that equality of apportionment or representation must be observed in the division of cities of the fourth class into wards, and the election of councilmen therefrom, we would feel obliged to sustain the appellants in their

efforts to annul the ordinance assailed; but, in the absence of such direction or adjudication upon the subject, our conclusion is that it was intended both by the Constitution and the Legislature that the people of these minor municipalities should be left free to exercise a discretion in the division of the city into wards and the election of councilmen therefrom. It is true that fair representation and equal apportionment is a valuable privilege, and one that should be adhered to; but, when the legislative department of the State that created these municipalities and provided an elaborate plan for their government failed to adopt either directly or by implication any scheme to regulate or control them in the selection of their legislative boards, we do not feel that the courts are warranted in interfering with the discretion lodged in the people of these cities and their representatives whose duty it is to divide the city into wards. So far as our examination extends, in every instance in which the judiciary has undertaken to interfere with the legislative department of the State or its municipalities in the power of apportionment and representation, authority direct or by implication has been found in the Constitution or the statutes.

In 8 Cyc. p. 777, it is said: "It may be stated as a general principle that statutes will not be held unconstitutional merely because they are unjust and repugnant to the general principles of justice, liberty, or right not expressed in constitutional provisions. * * * The validity of statutes deemed to be in violation of the spirit supposed to pervade all Constitutions has been considered at much length by the courts in a variety of cases; but an examination of the authorities upon this subject leads to the conclusion that the principle involved is more properly

a question of construction of some necessarily implied constitutional restriction resulting more from express constitutional provisions, than otherwise. The generally accepted rule is that courts will not declare a statute void merely because in their opinion it is opposed to the spirit supposed to pervade the Constitution. The authorities are not in harmony upon this question, but in nearly all of the cases where statutes have been held to be prohibited by the spirit of the Constitution or nature and structure of the government the acts in question have also been held to be in violation of some express or implied constitutional restriction.'' The text is fully supported by numerous authorities, among them being Cooley's Constitutional Limitations, p. 197, and Sharpless v. Mayor of Philadelphia, 21 Pa. 147, 59 Am. Dec. 759, where the court, through Chief Justice Black, said: ''We are urged, however, to go further than this, and to hold that a law, though not prohibited, is not valid if it violates the spirit of our institutions or impairs any of those rights which it is the object of a free government to protect, and to declare it unconstitutional if it be wrong and unjust. But this we cannot do. * * * The great powers given to the Legislature are liable to be abused. But this is inseparable from the nature of human institutions. The wisdom of man has never conceived of a government with power sufficient to answer its legitimate ends and at the same time incapable of mischief. No political system can be made so perfect that its rulers will always hold it to the true course. In the very best a great deal must be trusted to the discretion of those who administer it. In ours the people have given larger powers to the Legislature, and relied for the faithful execution of them on the wisdom and hon-

esty of that department, and on the direct accounta-
bility of the members to their constituents. There is
no shadow of reason for supposing that the mere
abuse of power was meant to be corrected by the
judiciary. There is nothing more easy to imagine
than a thousand tyrannical things which the Legisla-
ture may do if its members forget all their duties,
disregard utterly the obligations they owe to their
constituents, and recklessly determine to trample
upon right and justice. But to take away the power
from the Legislature because they abuse it, and give
to the judges the right of controlling it, would not be
advancing a single step." These well-considered
statements, although directed to the legislative
department of the State, are equally applicable to
the legislative boards of municipalities. In the case
before us, we are asked to assume extrajudicial pow-
ers by undertaking to interfere with the council's
apportionment of a city into wards and order it how
to proceed, in the absence of any direction whatever
from the legislative department as to the mode or
manner of exercising this political and administrative
function. This the courts cannot do without trench-
ing upon the rights and prerogatives that belong to
other branches of the government. Without legisla-
tive direction or constitutional authority to guide or
control us in the disposition of a purely politcal mat-
ter, we would be putting up our judgment against
that of those in whom the exclusive right has been
lodged by the power that created the municipality,
and be arrogating to ourselves, wisdom, honesty, and
fairness superior to those charged by law with the
control of these matters. This we do not feel dis-
posed or authorized to do. The government of these
cities in respect to the matter before us has been left

to the people acting through their boards, and, if the people of these cities desire to alter the method of selecting councilmen or place limitations upon their power in the division of cities into wards, they must apply to the legislative department of the government, or appeal to the good judgment and sound discretion of the members of their local boards. There are a number of cities of the fourth class in this State, and the conditions in no two of them are exactly alike, and it seems probable that it was the intention in the enactment of a general law for their government to allow the legislative board a large discretion in their governmental affairs. Whilst the division of Georgetown into wards by the council and the allotment of representation is apparently unfair and unequal, we do not feel disposed to adjudge that it exceeded the power granted. Nor can we hold that it violates any fundamental principle of government.

Wherefore the judgment of the lower court is affirmed.

CHIEF JUSTICE O'REAR (dissenting). Section 6, Bill of Rights requires that all elections shall be free and equal. A statute providing for an election of officials that gives to the residents of one locality two or three times as much power as is given to the same number in another locality, is obviously unequal. In my opinion the Constitution does not mean that the Legislature may make such unjust and insidious distinction, and show such partiality as utterly destroys the element of equality in elections by the people of a municipality for selecting the officers of the city.