## Craft v. Baker.

(Decided March 14, 1922.)

### Appeal from Perry Circuit Court.

1. Municipal Corporations—Time of Election of Mayor of Fourth Class City.—Section 160 of the Constitution requires a mayor of a fourth class city, to be elected by the voters thereof, at the regular time for the selection of mayor, if the council of the town have not adopted an ordinance providing for his appointment, sixty days before the November election, in the year, in which his selection is due to be made.

2. Municipal Corporations—Vacancy in Office of Mayor—Appointment.—An ordinance adopted by the council providing for the appointment of a mayor to fill a vacancy in an unexpired term, which will take place upon a specified day, does not authorize an appointment for a full term, which will commence five years after the ordinance to fill the vacancy was adopted, under section 3484 Kentucky Statutes.

MILLER & CRAFT, T. E. MOORE and R. T. MOORE for appellant.

H. C. FAULKNER for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Reversing.

This is a contest over the office of mayor of Hazard, a city of the fourth class. The appellant, who was plaintiff below, was elected to the office by the voters of the city at the regular election held in November, 1921, for the term commencing on the first Monday of January, 1922,

and received a certificate of election from the election commissioners. Of this there is no controversy. The appellee, who was defendant below, was appointed mayor by the council of the city, for the term beginning January 1, 1922. The fact that the defendant was appointed mayor by the council is not controverted, and the question for decision is which of the parties was validly selected for the office of mayor. This action was instituted by the plaintiff, under section 483 of the Civil Code, seeking to oust the defendant from the office, upon the ground that he is an usurper and to prevent further usurpation of the office. To determine the controversy, it will be necessary to consider certain pertinent provisions of the Constitution and statutes enacted by the legislature in conformity thereto. Section 160 of the Constitution provides:

"The mayor or chief executive . . . of towns and cities shall be elected by the qualified voters thereof: provided the mayor or chief executive . . . of the towns of the fourth, fifth and sixth classes may be appointed or elected as provided by law. The terms of office of mayors or chief executives . . . shall be four years, and until their successors shall be qualified. . . . "

This constitutional provision, it will be observed, in the first instance, provides with mandatory language for the election of the mayors of all cities and towns by the qualified voters of such cities and towns, and the question presented upon the construction of the section is whether the proviso has the effect to negative the requirement to elect, if the legislature should fail by a law duly enacted, to provide the manner of selecting the mayor of a city of the fourth class, and in that event whether the voters of a city would be without authority to elect one, and at the same time its council have no authority to appoint. Does the language place towns of the fourth, fifth and sixth classes in a class by themselves, to which the language of the constitutional section providing for their election by the voters, will have no application? It seems that if the Constitution makers had intended that the requirement that the mayors of all cities and towns should be elected by the voters, was to have no application to the mayors of towns of the fourth, fifth and sixth classes, they would have selected, which they might have easily done, language which would not have included such towns in the first instance. Clearly the legislature was authorized to provide by a general

law for the election or appointment of a mayor of a city of the fourth class, but in the event of its failure to act, evidently the constitutional provision providing for an election by the voters, does not fail. Of course, the section of the Constitution should be construed with only the purpose to ascertain its meaning and intent, because such meaning and intent, when ascertained must be held to be mandatory. A proviso ordinarily has the meaning of an exception to something which has gone before, but its language must be looked to to determine the extent of the exception, and here it does not appear to place the cities of the fourth, fifth and sixth classes in a class to themselves and remove them from the influence of the affirmative requirements of what was declared theretofore. The language of the section seems to solve the problem. It declares generally, that the mayors of all towns and cities "shall" be elected by their qualified voters, and then provides that the mayor of a fourth class city "may" be appointed or elected as provided by law. The meaning seems to be patent that the mayors of all towns shall be elected by their qualified voters, but, if the legislature desires to make a general law providing for their appointment or election in towns of the fourth, fifth and sixth classes, it is authorized to do so, but is not required to do so. If the circumstances and exigencies are such that it becomes desirable to select a mayor by appointment in cities and towns of the fourth, fifth and sixth classes, the power is delegated to the legislature to do so by a general law, so as to meet the exigencies and requirements of good government, as the business and circumstances of the town may require. Hence in the absence of legislative action, there would be nothing to interrupt the force of the requirement of the Constitution that all mayors shall be elected by the voters. The proviso read as an exception, only excepts the manner of selecting a mayor in a town of the fourth, fifth or sixth class, provided the legislature sees proper to determine it by a general law.

In the execution of the power granted to it by section 160, *supra,* with reference to the selection of a mayor of a city of the fourth class, the General Assembly enacted section 3484, Kentucky Statutes. The pertinent portion of that statute is as follows:

"The mayor may be elected by the people or appointed by the council, as may be provided by ordinance,

and enacted not less than sixty days previous to the No-
vember election, in the year in which the election or ap-
pointment is to be made, and shall hold his office for four
years. . . . "

It will be readily observed that by this enactment the
legislature did not provide for either an election or ap-
pointment of a mayor of fourth class cities, or the man-
ner of accomplishing their selection, but simply passed on
to the councils of such cities and towns the power which
the Constitution, section 160, *supra,* authorized it to ex-
ercise, but the exercise of that power by the council is
conditioned upon the fact that it exercise the power by
enacting an ordinance to that effect "sixty days previous
to the November election in the year in which the election
or appointment is to be made." This statute has been
held to be a constitutional exercise of legislative author-
ity. Brown v. Holland, 97 Ky. 249; Campbell v. Dabney,
id. The statute, however, as it will be observed did not
bestow upon the councill all the authority with which the
Constitution empowered the legislature, but, only dele-
gated to it the authority to determine whether the mayor
should be elected by the voters or appointed by the coun-
cil in the event the latter body chose to exercise that
power, by the enactment of an ordinance to that effect
sixty days before the November election, in the year in
which it was due to select a mayor. If it failed to exer-
cise the power delegated in the manner and at the time
prescribed, its efforts would be unavailing. The purpose
of the enactment of the legislature seems to have been to
delegate to the council the authority to determine the man-
ner of the selection of the mayor, because of the latter's
presumed superior knowledge of local conditions, and if
in its judgment it was necessary or profitable to change
the manner of selecting the mayor from election by the
voters to appointment by the council, it might do so if
it exercised the power in the manner and at the time pre-
scribed. Hence, it is clear that the General Assembly
having failed to prescribe whether the mayor of a fourth
class city should be elected by the voters or appointed,
but instead having delegated that authority to the coun-
cil, if the council fails to act in accordance with its dele-
gation of authority so as to provide for an appointment
instead of an election by the voters, the provisions for an
election by the voters of the city, as provided in the Con-
stitution will be held to be operative, as, in the event of

a failure by the General Assembly and by the council to change the manner of selecting the mayor, the constitutional provision, that he shall be elected, is self executing. A constitutional provision is self-operating when no legislation is necessary, or could add to or take from it, and when a requirement is made by the Constitution it is in the nature of a statute enacted by all of the people. If it can be given reasonable effect, without aid of legislation, it is self-operating, unless it appears that such effect was not intended. In the instant case, there would be no reason to say that the provision requiring that all mayors should be elected by the voters would not be operative, unless and until the General Assembly should provide otherwise, or the council to which it has delegated its authority should otherwise provide. In the language of Cooley a provision of the Constitution is self-executing "If it supplies a sufficient rule by which the right may be enjoyed and protected, or the duty imposed may be enforced." The following cases illustrate the view herein expresed: Lowe v. Commonwealth, 3 Met. 237; Commonwealth v. Jones, 10 Bush 725; Sanders v. Commonwealth, 13 K. L. R. 820; L. & N. R. R. Co. v. Commonwealth, 105 Ky. 179; Louisville Banking Company v. Commonwealth, 142 Ky. 690; Winchester v. Howard, 136 Calif. 432; State v. Caldwell, 50 La. Ann. 666; Hickman v. City of Kansas, 120 Mo. 110. Otherwise the council being without authority to appoint a mayor, without having enacted a valid ordinance to that effect, the selection of a mayor for a full term and at the regular time for such election or appointment, there would be no authority to select a mayor at such time and for such term. The council, it is true, has never adopted any ordinance providing for the election of a mayor by the voters of the city, but in accordance with the conclusion at which we have arrived, such ordinance would not be necessary to authorize the election of a mayor by the voters at the regular times for the election of such officer, in the absence of any requirements by the council to the contrary.

It is insisted for the appellee, however, that the council exercised the power delegated to it by the legislature, and thus clothed itself with the authority to appoint a mayor for the term beginning on the first Monday of January, 1922, and therefore the election of appellant at the November election, 1921, for that term or any part of it, was a nullity. If the council has so acted in accordance with the statute, granting to it such authority it must

be conceded that the appellee's contention is correct, as section 3484, *supra,* without doubt, empowers the council to designate the manner of selecting a mayor, and to take away from the voters the right to elect one, or may provide for such right. It is conceded that the council on July 3, 1916, caused the following entry to be made in the book containing the minutes of their proceedings: "It is now ordered that the city attorney, J. A. Grace, prepare and present on today to the council an ordinance requiring the mayor, police judge and chief of police of the city of Hazard to be appointed by the city council. Came city attorney, J. A. Grace, and presented to the council three separate ordinances which were filed by the clerk, providing that the vacancy occurring on Tuesday after the first Monday in November 16, be filled by appointment by the city council; that the office of judge of the Hazard police court be hereafter filled by appointment by the city council, instead of being elected by the voters as heretofore, and that the office of chief of police be filled by appointment by the council, which said ordinances are now ordered to be, and they are passed and adopted by the council, and will be found copied in full in the ordinance book."

The ordinance adopted as found in the book containing the ordinances is as follows:

"July 3, 1916. The city council of the city of Hazard, Ky., do ordain as follows: That the vacancy in the office of mayor of the city of Hazard, Ky., which will occur on Tuesday after the first Monday in November, 1916, be filled by appointment by the city council of said city."

The other ordinances adopted at the same time in reference to the offices of police judge and chief of police followed closely the language used in the minutes of the proceedings, as the ordinance in reference to the mayor did. Just why the council apprehended a vacancy in the office of mayor on Tuesday after the first Monday in November, 1916, does not appear, and it is immaterial, as the ordinance provided only for the filling of a vacancy which occurred during the term of some incumbent of the office, and could not have related to the manner of selecting the mayor for a full term at the regular time for the election or appointment of such an incumbent. The regular time for the election or appointment of all officers of cities and towns, under the present Constitution, was fixed by section 167 of it, at the November election, 1893.

The term of office of mayor was fixed by section 160 of the Constitution, and section 3484, Kentucky Statutes, at four years, the term to begin as provided, by section 3550, Kentucky Statutes, on the first Monday of January, after the November election, at which he was elected, or after which he was appointed, if an ordinance to that effect had been adopted. Section 3485, Kentucky Statutes, provides:

"The members of the board of council and all other elective offcers of cities of the fourth class, shall be elected at the times and for the terms prescribed by the Constitution." Jones v. Wilshire, 98 Ky. 391; Johnson v. Wilson, 95 Ky. 415. It will thus be observed that the time of election of all officers of cities and towns required to be elected by the Constitution and by general laws enacted in conformity therewith, in the odd years, beginning with the elections in 1893, for such as have four year terms makes the regular election at November, 1921, as the proper time for the election of a mayor of a fourth class city, and the time for the election of a mayor for a regular term preceding that was November, 1917. The filling of vacancies in elective offices, except as otherwise provided, is controlled by the provisions of section 152 of the Constitution, but a vacancy which did not occur until the Tuesday after the first Monday in November, 1916, of course, could not be filled at the election held at November, 1916, because the election had already passed before the vacancy occurred and where under such circumstances the term of the office expired at the next regular election, as the office of mayor of a fourth class city, it could be filled as provided by section 3552, Kentucky Statutes, for the unexpired portion of the term. Hence, the purpose of the ordinance of July 3, 1916, is not apparent, but as expressed, it was only for the purpose of authorizing the council to fill a vacancy, which occurred at a time, when no election could be held to fill the vacancy, and which was to occur at a specified time, and was only for the purpose of filling a vacancy in an unexpired term, and no intent can be gathered from it, that the council intended it as an expression of its purpose of changing from thenceforward the manner of selecting the mayor, or intended thereafter to exercise the power of appointment at the time of election or appointment of a mayor became due. Further, the ordinance was not enacted in the year in which the election or appointment of a mayor was to be made, for

the term beginning on the first Monday of January, 1922, but more than five years theretofore, and hence if such power of appointment was intended to be exercised, it was not upon the condition upon which it was granted. The conclusion arrived at in the case of Sally v. Baker, 180 Ky. 833, is not inconsistent with the conclusion reached in this action. That action involved a controversy over the office of judge of the police court, and the ordinance of the council in reference thereto, and the action which the council is empowered to take in reference to the selection of a police judge as provided for by section 3510, Kentucky Statutes, is very dissimilar to the power conferred upon the council with reference to the selection of a mayor as is provided by section 3484, *supra*, because, in the one the council may adopt an ordinance providing for the appointment of a police judge sixty days before any November election and thereby indicate its purpose, as the ordinance did in that case, to thereafter exercise the power of appointing a police judge instead of permitting his election by the voters, but in the instant case, the statute requires the ordinance to be adopted by the council, with reference to the selection of a mayor, in the year in which the election of a mayor is due to be made. The contention as to whether the entry made upon the minute book of the council on July 3, 1916, directing the preparation and presentation of an ordinance relating to the selection of a mayor is also an ordinance, it is unnecessary to decide, since it indicates the same intention as is set forth in the ordinances, which were adopted upon that day, and it is clear that the council intended in the enactment of the ordinance to set forth its purpose. For the reasons above stated, the ordinance of July 3, 1916, does not empower the council to appoint a mayor for the regular term, beginning on the first Monday of January, 1922, as the purpose of its passage expired in 1916.

The court, therefore, was in error in sustaining a demurrer to the petition and reply of plaintiff, and the judgment is reversed and remanded for proceedings consistent with this opinion.

All the members of the court sitting.