## PAYNE v. DAVIS et al.

Court of Appeals of Kentucky.
Jan. 30, 1953.

S. Y. Trimble, IV, Hopkinsville, for appellant.

Stephen P. White, Jr., and W. H. Southall, Hopkinsville, for appellees.

COMBS, Justice.

Hopkinsville, a city of the third class, has operated for many years under the commission form of government. An election was held on November 4, 1952, under the provisions of KRS 89.290 to determine whether government by commission should be abandoned. The result of the election was in favor of abandoning this form of government. The statute provides that when the result of the election is in favor of abandoning the commission form of government, a certificate to that effect shall be spread upon the records of the city "at the next regular meeting of the city council [The use of the word "council" in the revised statutes apparently is an inadvertence as the expression used in the original Act, c. 92, 1914, is "city commission."], and thereupon the city shall cease to be governed by the commission form of government, and shall thereafter be governed by the general city laws applicable to that class of city * * *." The general law applicable to cities of the third class is compiled as chapter 85, KRS.

The question presented in this declaratory judgment suit concerns the effective date of the cessation of the commission form of government and the commencement of government by council as contemplated by KRS, chapter 85. The trial judge held the effective date of the change to be December 3, 1952, which was the succeeding day after the certificate of the election was spread upon the city records. He was of the opinion that the present elected city officials, consisting of the mayor, police judge, prosecuting attorney, and two commissioners, are entitled to retain their respective offices until the expiration of the terms for which they were elected; and that the two commissioners should constitute the legislative body of the city until the election and qualification of city councilmen at the November election, 1953. This part of the judgment is based on the premise that the office of city commissioner is a constitutional office under section 160 of the Constitution, and the two-year term designated by that section for "members of legislative boards" cannot be reduced by the General Assembly. The proponents of the councilmanic form of government have appealed and the advocates of the commission form of government have prosecuted a cross-appeal.

We are confronted at the outset with a question of procedure, to wit, the right of plaintiffs to maintain the suit under the Declaratory Judgment Act, Civil Code of Practice, § 639a–1 et seq. Plaintiff filed the suit as a voter and taxpayer of the City of Hopkinsville and as representative and leader of those persons who advocate termination of the commission form of government. The defendants are: The mayor of the city, the police judge, the city prosecuting attorney, the two city commissioners, John O. Hardin, referred to as a representative of those persons in favor of the commission form of government, and the City of Hopkinsville. An answer was filed by the Attorney General in which he acknowledged receipt of copy of the petition, stated he did not desire to be heard, and agreed that judgment might be entered without further notice to him. In support of their argument that plaintiff does not have legal capacity to maintain the suit, defendants cite several cases which hold that a taxpayer, as such, may not question the eligibility of a candidate or the title of the holder of an office. Dietz v. Zimmer, 231 Ky. 546, 21 S.W.2d 999; Friley v. Becker, 300 Ky. 749, 190 S.W.2d 355. We do not regard these cases as applicable. The question here is not merely whether the two commissioners shall complete their terms. The paramount question is whether the city shall be operated under the commission or the councilmanic form of government during the year 1953. Although a taxpayer and voter may not question the

eligibility of a candidate or the title of the holder of an office, we think he may, in good faith and as a representative of a class, maintain a suit such as this under the Declaratory Judgment Act to determine the system of local government under which he and other citizens of the municipality shall be governed. Annotation 174 A.L.R. 562. This Court has approved such practice in a number of analogous situations. Hardin v. City of St. Matthews, Ky., 240 S.W.2d 554; Co. Bd. of Ed. of Montgomery Co., Ex parte, 260 Ky. 246, 84 S.W.2d 59; Veith v. Tinnell, 306 Ky. 484, 207 S.W.2d 325.

We now approach the merits of the controversy. There is no question about what the Legislature intended. The Act clearly and specifically provides that the change in the form of government shall be effective immediately after the certificate of election returns is spread upon the city records, and the Act clearly contemplates this shall be done at the next regular meeting of the commission after the election. In this case, however, there are practical difficulties.

There is no provision in the Act for election or appointment of a city council; KRS 85.050 provides that the city council shall divide the city into not more than six wards and KRS 85.040 requires that the number of councilmen be apportioned equally among the wards of the city; the City of Hopkinsville is not now divided into wards and there is no statutory method by which this may be done until a city council is appointed or elected; the terms of the present city officials have not expired.

It may be noted here that the offices of mayor, police judge and prosecuting attorney are common both to the commission and the council form of government in cities of the third class, KRS 89.040, and the right of the incumbents of those offices to complete their terms is not in question.

■■■ The main question in the case is whether the office of city commissioner may be abolished and the terms of the incumbents thereby terminated. We consider the rule settled that an office created by the Legislature may be abolished by the same authority, and when a statutory office is legally abolished, the incumbent loses such right as he has in the office. 42 Am.Jur., Public Officers, page 905, section 33, page 907, section 35; Howard v. Saylor, 305 Ky. 504, 204 S.W.2d 815; Cawood v. Hensley, Ky., 247 S.W.2d 27; Tierney v. Pendleton, Ky., 253 S.W.2d 376. The converse is also true. Neither the General Assembly nor any city legislative body may abolish an office designated eo nominee in the Constitution or reduce the term of such an office. Cawood v. Hensley, Ky., 247 S.W.2d 27, cited above; Black v. Sutton, 301 Ky. 247, 191 S.W.2d 407; Pinkston v. Watkins, 186 Ky. 365, 216 S.W. 852.

If the office of city commissioner is a constitutional office, it is made so by section 160 of the Constitution. That section reads in part:

"The Mayor or Chief Executive, Police Judges, members of legislative boards or councils of towns and cities shall be elected by the qualified voters thereof: * * *. The terms of office of Mayors or Chief Executives and Police Judges shall be four years, and until their successors shall be qualified, and of members of legislative boards, two years. * * *"

■■ It is the recognized rule that unless the office or officer is mentioned in the Constitution eo nominee, the name may be changed or the office abolished, provided the function, if retained at all, is continued in some official chosen by the municipality. Covington Bridge Commission v. City of Covington, 257 Ky. 813, 79 S.W.2d 216, and cases therein cited. The appellant takes the position the expression "members of legislative boards" is used in a generic sense and does not refer eo nominee to any specific office or official. The difficulty with this argument is that although section 160 does not provide for any specific type of municipal legislative board, it does provide that the term of those officers shall be two years. Clearly, a city commission is a legislative board within the meaning of that section of the Constitution. Although

the office is not established eo nominee the term of the office, when it is established, is fixed at two years.

 We are of the opinion, however, that section 160 must be read in connection with section 60 of the Constitution. Section 60 reads in part:

"* * * No law, except such as relates to * * * the regulation by counties, cities, towns or other municipalities of their local affairs, shall be enacted to take effect upon the approval of any other authority than the General Assembly, unless otherwise expressly provided in this Constitution."

It has been held in a number of cases that the General Assembly has authority under this section to permit municipalities to change the organization and form of their government. Bryan v. Voss, 143 Ky. 422, 136 S.W. 884; Klein v. City of Louisville, 224 Ky. 624, 6 S.W.2d 1104; Brown v. Holland, 97 Ky. 249, 30 S.W. 629; Moore v. City of Georgetown, 127 Ky. 409, 105 S. W. 905, 32 Ky.Law Rep. 323.

As pointed out above, the offices of mayor and police judge are mentioned by name in section 160, but there is no provision for any particular type of municipal governing body. The reference in that section to "legislative boards" rather than to a particular type of board or council indicates the framers of the Constitution contemplated that the organization and form of municipal government might be changed from time to time to meet changing conditions and to accord with the will of the people. When section 160 and section 60 are read together, we think the provision in section 160 relating to terms of office of legislative boards is subject to the condition that the municipal form of government might be changed and the office abolished. The language used in Gilbert v. City of Paducah, 115 Ky. 160, 72 S.W. 816, 818, is applicable here. In that case the City of Paducah had been transferred from a third class city to a city of the second class, and one of the questions in the case was the right of certain city officials to retain their offices until their terms expired. We quote from the opinion:

"If the Legislature abolishes a municipal corporation, the rights of its officers cease with its existence, for they take their offices subject to the power vested in the Legislature to abolish them, when such power exists. Although it is provided in section 161 of the Constitution that the compensation of no municipal officer shall be changed after his election or during his term of office, this section must be read in connection with section 156, and does not impair the power of the Legislature to abolish the municipality or abolish the office by assigning the city to a different class, which is, in effect, to create a new municipal entity. * * * Appellants, therefore, by the transfer of the city from one class to the other, were legislated out of office, except so far as their rights were saved by the provision quoted from section 3264, Ky.St."

The cases of Jones v. Cassidy, 154 Ky. 748, 159 S.W. 562, dealing with a change of the form of government in the City of Lexington, and City of Somerset v. Caylor, Ky., 241 S.W.2d 990, involving reclassification of the City of Somerset, are to the same general effect.

 The term of two years, mentioned in section 160, necessarily refers to an office legally in existence during the 2-year term, for if there is no office there can be no term. If it is admitted that the General Assembly has authority under sections 60 and 160 to permit a municipality to abolish the office of councilman or city commissioner by changing its form of government, we think the implication is clear that the term of the incumbent is terminated when the office is abolished. Any other interpretation would result in the anomalous situation of an officer with a term but with no office. We cannot accept the theory that the Legislature may abolish an office, but may not at the same time terminate the term of the incumbent of that office. In construing a Constitution recognition must be given not only to its express provisions, but also to that which is clearly implied. The general rule is stated in 11

Am.Jur., Constitutional Law, section 56, page 666:

"The fact that some degree of implication must be given to words is a proposition of universal adoption; implication is only another term for meaning and intention apparent in the writing on judicial inspection."

■ The views expressed herein impel the conclusion that the form of government in Hopkinsville changed from the commission form to the councilmanic form, effective December 3, 1953. The office of city commissioner was abolished, and the terms of the incumbent city commissioners terminated as of that date. It is provided by KRS 85.310 that vacancies in elective city offices shall be filled by the common council, but that section is not applicable in a situation such as this where there is no common council in existence. In this situation, the applicable statute is KRS 63.190 which provides: "In every case where there is no other provision of law for the filling of a vacancy in any office, the vacancy shall be filled by appointment by the Governor."

It is argued that councilmen may not legally be appointed by the Governor in this case because KRS, chapter 85, requires that third class cities be divided into wards by the common council, and that members of the council be elected from the ward in which they reside. According to this argument, the city cannot be divided into wards until there is a valid city council, and there cannot be a council until the city is divided into wards, so we have a complete impasse. We do not consider this obstacle as insurmountable. There must be a starting point and we think the starting point is the appointment of a common council to serve until the November, 1953, election. The council should, of course, divide the city into wards in order that a new council may be elected in the manner provided by statute.

The judgment is reversed on the appeal and affirmed on the cross-appeal, with directions that a judgment be entered in conformity with this opinion.