## Bryan v. Voss.
## Bryan v. Jeffers.

(Decided May 2, 1911.)

## Appeal from the Campbell Circuit Court.

1. Municipalities—Form of Government—Conflict with Constitution —An act providing a commission form of government for cities of the second class does not violate section 51 of the Constitution because the old law under which the cities are now governed is not re-enacted and published at length with the new act.

2. Provisions of Act—Germain Subject—All the provisions of the act being germain to the government of the city the act does not relate to more than one subject and this subject is expressed in the title.

3. Special Legislation—The act is not special legislation but applies to all cities of the second class although one city may put it into operation and another may not.

4. Constitutional Provision—Regulating Local Affairs—The act is not void under section 60 of the Constitution because enacted to take effect upon the approval of the voters of the city, the Legislature being authorized to pass acts of this character as to the regulation of their local affairs by counties, cities, towns and other municipalities.

5. Legislative and Executive Functions—Legislative and executive functions may be vested by statute in municipal officers.

6. Election of City Officials—The Constitution does not require cities to be divided into wards and the Legislature may provide for officers to be selected from the city at large.

AUBREY BARBOUR, THOS. C. CAROTHERS and FRED B. BASSMAN for Bryan.

C. T. BAKER for City of Newport.

S. C. BAILEY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

By an act approved March 1, 1910, it was provided in substance that any city of the second class may become organized and be governed under the commission form of government. The act does not become operative in any city until a majority of the legal votes cast at the election therein provided for shall be in favor of it. An election was held in the city of Newport under the act,

and the proposition carried. Thereupon these suits were brought to enjoin the organization of the city government under the act; one by a tax payer suing on behalf of himself and all other taxpayers, the other by an alderman of the city whose term of office was cut short by the act. The act is assailed on seven grounds: (1) It does not re-enact that part of the charter of the cities of the second class that it attempts to amend; (2) It relates to more than one subject; (3) The subject of the act is not expressed in the title; (4) The act is special legislation; (5) It is void because enacted to take effect upon the approval of a city; (6) Legislative and executive duties are vested in the commission; (7) The legislative boards must be selected from wards. The circuit court held the act invalid. The captions and opening sections of the act are as follows:

"An act to amend an act entitled 'An Act for the government of cities of the second class in the Commonwealth of Kentucky,' which was approved March 19, 1894, and thereafter in due course became a law, and as same, has since been amended, all of which said act and amendments now appear as Article 3, of Chapter 89 of the Kentucky Statutes, in John D. Carroll's Edition thereof in 1909.

"Be it enacted by the General Assembly of the Commonwealth of Kentucky:

"1. That an act entitled 'An act for the government of cities of the second class in the Commonwealth of Kentucky, which was approved March 19, 1894, and thereafter became a law, and the amendments thereto, which act and which amendments do now appear as Article 3 of Chapter 89 of the Kentucky Statutes, in John D. Carroll's Edition thereof in 1909, be amended by adding thereto, at the end thereof, the following provisions:

"1. Any city of the second class under the laws of the Commonwealth of Kentucky, may become organized and be governed under the provisions of this act by proceeding as hereinafter provided. Organizing under this act shall not change the corporate entity of any such city, but the body politic and corporate shall remain the same body that it now is."

Here follows twenty-eight sections providing for a commission form of government. The objections to the act will be considered in the order stated.

1. Cities of the second class are now governed under the act of March 18, 1894. The act of March 21, 1910, is simply an addition to that act, giving the cities of the second class the option to choose between the two forms of government. If a city does not elect to be governed under the act of 1910, it remains under the act of 1894. If it elects to be governed under the act of 1910, then its government will be determined by that act. The act of 1910 does not take the place of the previous act although made for the government of cities of the second class, but merely gives them the power to substitute another form of government in lieu of the old. Section 51 of the Constitution provides:

"No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred, shall be re-enacted and published at length."

The act of 1910 does not revise or extend the provisions of the act of 1894, but leaves those provisions just as they were before; they simply cease to be operative in a city in which the new system of government is put into effect. It would have served no good end to have republished the act of 1894 in the act of 1910. In Purnell v. Mann, 105 Ky. 87, Murphy v. Louisville, 114 Ky., 762 Prowse v. Board of Education, 136 Ky., 365, we sustained similar legislation as not in violation of the constitutional provision above quoted. The reasoning of those opinions controls here. If the title to the act had read "An act to further regulate the government of cities of the second class" the sense would not have been different or clearer.

2. All the provisions of the act are germain to the commission form of government. In an act for the government of a city elections may be provided for and so may primary elections to be held in the city. All the provisions of the act are germain to the government of the city which is the subject of the act.

3. The subject of the act is the government of the cities of the second class and this subject is clearly shown by the title.

4. Section 59 of the Constitution among other things provides:

"The General Assembly shall not pass local or special acts * * * to grant a charter to any corporation or to amend the charter of any existing corporation."

Section 156 provides:

"The cities and towns of this Commonwealth, for the purposes of their organization and government, shall be divided into six classes. The organization and powers of each class shall be defined and provided for by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions."

It is insisted that some of the cities of the second class may adopt the commission form of government while others do not, and that thus there will not be a uniform law governing cities of the second class. But this argument overlooks the fact that each city of the second class is now governed by the act of 1894, and that each of them has the power to adopt the commission form of government under the act of 1910. They all are governed by the same law; they each have precisely the same powers; one may exercise the power and another may not, but the mere failure to exercise the power does not affect its existence. The Constitution does not require absolute uniformity in all cities of a given class; to illustrate, each city of the second class may pass ordinances on certain subjects, one may pass one ordinance, another, others. The ordinances although relating to the same subject may be very different, and so in the government of the cities of a given class, the Legislature by the acts now in force has given the cities numerous options, which one has exercised and another has not. The act is not special legislation for it is applicable to all cities of the second class.

5. This brings us to the vital question in the case, which is, may the Legislature make a law which is to take effect upon its adoption by a particular city? Section 60 of the Constitution, among other things, provides:

"No law, except such as relates to the sale, loan or gift of vinous, spirituous or malt liquors, bridges, turnpikes or other public roads, public buildings or improvements, fencing, running at large of stock, matters pertaining to common schools, paupers, and the regulation by counties, cities, towns or other municipalities of their local affairs, shall be enacted to take effect upon the approval of any other authority than the General Assem-

bly, unless otherwise expressly provided in this Constitution."

This provision is to be read in connection with Section 156, supra. The question turns on the meaning that shall be given the words "The regulation by counties, cities, towns or other municipalities of their local affairs." It is evident that the General Assembly is given power to pass a law for the regulation by counties, cities, towns or other municipalities of their local affairs and allow it to take effect upon its adoption by the people of the municipality. It is insisted however that the regulation of their local affairs does not include the substitution of one form of government for another. We see nothing in the section to so limit the application of the words. The sale of intoxicants, the building of bridges, turnpikes or other public roads, public buildings or improvements, fencing, running at large of stock, matters pertaining to common schools, and paupers, may be so submitted; and if the words "regulation by counties, cities, towns or other municipalities of their local affairs," were not intended to include the matter of local self-government, we can hardly see why these words were inserted in the section after the other things which were named. Section 144 of the Constitution provides for a fiscal court to be composed of the county judge and the justices of the peace, or of the county judge and three commissioners to be elected from the county at large. Whether a county should be governed by a fiscal court composed in one way or the other was not determined by the constitutional convention, but left to be determined by the Legislature, and under the power to permit the regulation by Counties of their local affairs we see no reason why the Legislature might not have passed an act allowing each county to take a vote and determine for itself whether its fiscal court should be composed in one way or the other. The constitutional convention intended all the municipalities of the State of the same class to have the same powers, but it was not contemplated that the General Assembly should be denied power to permit the regulation of their local affairs by the municipalities themselves. The above views are sustained by the following authorities: In Re Cleveland, 52 N. J. 540, Meredith v. Perth Amboy, 60 N. J. Law 134, People v. Kipley, 171 Ill., 44, People v. Simon, 176 Ill., 165 Adams, v. Beliot 105 Wis. 363, State

v. Pond, 93 Mo. 606, Eckerson v. City of Des Moines, 137 Ia. 452, Cole v. Dorr, 80 Kans. 251, Brown v. Holland, 97 Ky. 249, Moore v. Georgetown, 32 R. 323, Clark v. Rogers, 81 Ky. 43.

6. Sections 27 and 28 of the Constitution are as follows:

"The powers of the government of the Commonwealth of Kentucky shall be divided into three distinct departments, and each of them shall be confined to a separate body of magistracy, to-wit: Those which are legislative, to one; those which are executive to another; and those which are judicial, to another."

"No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted."

These provisions apply only to the Commonwealth. (Eckerson v. Des Moines, 137 Ia., 452.) Under the city charters now in force, the city councils in cities of the second class exercise both legislative and executive functions and this is true in a large per cent of the municipalities in the State and has been so from the foundation of the government. The Constitution vests the judicial power of the State in certain officers, and no others may exercise these powers. But it has not been the policy of the State to separate legislative from executive functions in its government of the municipalities. The city councils from time immemorial have had charge of the fiscal matters of the municipality and the general control of its affairs, and they have at the same time exercised certain limited legislative functions.

7. Section 160 of the Constitution among other things provides:

"When any city of the first or second class is divided into wards or districts, members of legislative boards shall be elected at large by the qualified voters of said city, but so selected that an equal proportion thereof shall reside in each of the said wards or districts; but when in any city of the first, second, or third class, there are two legislative boards, the less numerous shall be selected from and elected by the voters at large of said city; but other officers of towns or cities shall be elected by the qualified voters therein, or appointed by the local authorities thereof, as the General Assembly may, by a general law, provide; but when elected by the voters of

a town or city, their terms of office shall be four years, and until their successors shall be qualified.".

It will be observed that the Constitution does not require that a city of the first or second class shall be divided into wards, or that there shall be two legislative boards. Whether the city shall be divided into wards or whether there shall be two legislative boards or one is left to be provided by law. The power which created the boards may abolish them. In the act before us the General Assembly abolishes the boards by necessary inference when the Commission form of government goes into effect.

Judgment reversed and cause remanded for a judgment as above indicated.