STATE, EX REL. WILMOT L. BAUGHN, JR., RELATOR, V. WILLIAM G. URE, CITY TREASURER, RESPONDENT.

FILED MARCH 12, 1912. No. 17,501.

1. Statutes: ENACTMENT: CONSTITUTIONAL PROVISIONS. Where an act is passed as original and independent legislation and is complete in itself so far as applies to the subject matter properly embraced within its title, the constitutional provision respecting the manner of amendment and repeal of former statutes has no application.

2. ———: ———: ———. The mere fact that an act of the legislature adopts the provisions of prior acts by reference thereto does not render the new act amendatory of the acts to which reference is made if in other respects it is a complete act in itself.

3. ———: Constitutionality: Commission Plan of City Govern-
ment. The provisions of the constitution dividing the powers
of government into three distinct departments, legislative,
executive, and judicial, and prohibiting any person of one de-
partment from exercising the powers belonging to the others,
apply to the government of the state, and not to the government
of local subdivisions such as municipal corporations; therefore,
the Commission Plan of City Government provided for in chapter
24, laws 1911, which permits the exercise of all such powers by
certain officers named therein is not invalid as violating such
constitutional provisions.

4. ———: ———: ———. Where a law is general and uniform
throughout the state, operating alike upon all persons and locali-
ties in the same class, it is not open to the objection that it is
local or special legislation.

5. ———: ———: ———. There is no requirement in the constitu-
tion that the details of local government shall be the same in all
cities of like population. Although under the operation of the
act allowing the adoption of the Commission Plan of City Govern-
ment some cities, within the class described in the act, may not
adopt the provisions thereof, this does not render the act violative
of the constitutional provision that no local or special act shall be
passed "changing or amending the charter of any town, city or
village."

6. ———: ———: Title of Act. The provisions of section 11,
art. III of the constitution, that "no bill shall contain more
than one subject, and the same shall be clearly expressed in its
title," are intended to prevent surreptitious legislation. The
court will not be warranted in holding that an act of the legis-
lature is void because more appropriate or a better arrangement
of the language in the title might have been adopted, if the
general purpose of the act is expressed and the matter contained
in the body of the act is germane thereto.

7. ———: Validity. Where a portion of a statute is in violation of
the constitution, if the objectionable part was not an inducement
to its passage and may be eliminated without interfering with
the general purpose of the act, and the remainder of the act is
valid and capable of being enforced, the act will be upheld.

8. ———: Constitutionality: Elections. The provisions of the
act in question, that the only candidates "whose names shall be
placed upon the official ballot" at the city election shall be those
nominated at the preceding primary election, does not prohibit
any voter from inserting in such ballot the name of any person
for whom he may desire to vote, and does not violate the pro-

visions of the constitution with regard to the freedom of elections.

9. **Officers:** LEGISLATIVE CONTROL. As a general rule offices created by the legislature may be controlled by that body. The term of officers may be shortened, the office abolished, or changes made in the duties to be performed, without thereby violating any constitutional provision.

10. **Statutes:** CONSTRUCTION. A statute of doubtful meaning should be construed, if reasonably possible, so as to carry out the purpose and intention of the legislature, and when this purpose is manifest it will prevail over a seeming conflict in the language. The meaning must be ascertained from a consideration of all that is said in the act upon the same subject matter, and later expressions will usually control the language used in preceding portions of the statute.

ORIGINAL application for a writ of mandamus to compel respondent to accept filing fee, to enable relator to become a candidate for city clerk of the city of Omaha. *Writ denied.*

*Isidore Zeigler,* for relator.

*John P. Breen* and *John A. Rine, contra.*

*E. O. Kretsinger, A. M. Morrissey* and *Meier & Meier, amici curiæ.*

LETTON, J.

This is a proceeding in mandamus to compel William G. Ure, as city treasurer of the city of Omaha, to receive from the relator the filing fee of $5 provided by law to enable him to file his application to have his name placed upon the ballot at the primary election in 1912 as a candidate for the office of city clerk provided for in chapter 12a, Comp. St. 1909, governing cities of the metropolitan class.

Relator alleges his tender and the refusal by respondent of the lawful fee; the reason given being that the office of city clerk is no longer an elective office in said city, and that he as such treasurer had no authority or power

6

to receive said fee because of the provisions of chapter 24, laws 1911, commonly known as the "Commission Plan of City Government," which act it is alleged was regularly and legally adopted by the electors of that city at a special election and so declared by the duly authorized officers of said city.

Relator in substance alleges that the statute last referred to is in violation of the constitution and void for the following reasons:

(1) Because, although the act purports to be an act complete in itself, it modifies and repeals various prior laws and sections thereof, without naming the same, or in express terms repealing or re-enacting such prior laws and sections. Certain sections in chapter 12a, Comp. St. 1909, being the general law governing cities of the metropolitan class, and also several sections of the general primary election laws of the state are alleged to be amended and repealed by the act, without naming them, which is said to be in violation of section 11, art. III of the constitution.

(2) Because it becomes operative and goes into effect only upon, and not until, the electors of any city desiring to come under its operation and be governed by it vote upon its adoption, and that the legislature thereby has unlawfully attempted to delegate its powers of legislation to that portion of the people of the state adopting said act.

(3) Because whenever the provisions of the law are adopted by any city, then the act becomes special legislation as to the city adopting the same, in that such city is not thereafter governed by the same law as cities of the same class not adopting the act, which result is prohibited by section 15, art. III of the constitution.

The cause is now before us for hearing upon a demurrer to the petition, which, of course, admits all the foregoing facts well pleaded. If the act is void, then it was the duty of respondent to receive the filing fee tendered, and the relator is entitled to the writ; but, if valid, the writ must be refused.

The title of the act under consideration is "An act for the government of all cities having, according to the last preceding state or national census, five thousand or more population, and to enable such cities to adopt the provisions of this act called the 'Commission Plan of City Government.'" Laws 1911, ch. 24.

The relator concedes that, so far as its title is concerned, this may be deemed an act complete in itself, but it is said that the officers whose election is provided for in the act have to resort to other and prior laws governing the cities in the state adopting the plan to ascertain the powers and duties of the government of such cities, and that for that reason the act is not complete in itself but amendatory; that it does not clothe the officers with power sufficient to govern a city by its own terms, and that consequently, it cannot be said to be an act complete in itself, although the title so indicates. In support of this contention relator cites *Smails v. White*, 4 Neb. 353; *Sovereign v. State*, 7 Neb. 409; *In re House Roll 284*, 31 Neb. 505; *Stricklett v. State*, 31 Neb. 674; *Haverly v. State*, 63 Neb. 83; *German-American Fire Ins. Co. v. City of Minden*, 51 Neb. 870; *Van Horn v. State*, 46 Neb. 62; *City of South Omaha v. Taxpayers' League*, 42 Neb. 671; *Trumble v. Trumble*, 37 Neb. 340; *Board of Education v. Moses*, 51 Neb. 288.

These cases to some extent give countenance to this argument. The law is firmly settled by the later decisions in this state, however, that, where an act is passed as original and independent legislation and is complete in itself so far as applies to the subject matter properly embraced within its title, the constitutional provision respecting the manner of amendment and repeal of former statutes has no application. It is pointed out in 1 Sutherland (Lewis) Statutory Construction (2d ed.) sec. 239, that the later cases in this state are in harmony with the current of authority in other jurisdictions. We deem it unnecessary to do more than refer to the following decisions: *Allan v. Kennard*, 81 Neb. 289; *Zimmerman v. Trude*, 80 Neb. 503; *State v. Cornell*, 50 Neb. 526; *Affholder v. State*, 51 Neb.

91; *Van Horn v. State*, 46 Neb. 62; *De France v. Harmer*, 66 Neb. 14; *Wenham v. State*, 65 Neb. 394; *Nebraska Loan & Building Ass'n v. Perkins*, 61 Neb. 254; *State v. Moore*, 48 Neb. 870.

In *Smails v. White*, *supra*, the opinion seems to indicate that because the act denounced changed the time in which to file an undertaking on appeal and left the manner of taking the appeal as it was, so that reference was necessary to the former act to ascertain the manner of appealing, this made the law obnoxious to the constitution. This point is considered in *Pacific Express Co. v. Cornell*, 59 Neb. 364, 377, where it is said of the new law: "It but placed the companies, to which it was made applicable, under the supervision of certain officers, cast further duties upon the latter, and for the extent of their jurisdiction or power, and the manner of procedure in its exercise, refers to another law of prior existence. This was not fatally objectionable legislation." Also, in *Nebraska Loan & Building Ass'n v. Perkins*, 61 Neb. 254, where discussing it, this court said: "Nor is the fact that it refers to another law, making it requisite to follow the requirements of the latter in forming these corporations, a reason why the rule should not prevail. This does not constitute the act so uncertain as to render it difficult to ascertain just what the law is intended to be. The object of the constitution in requiring the portion of the law amended to be included in the new legislation is to preclude the amendment of laws in so blind a maner as to render it difficult to ascertain just what law is intended to be amended." The mere fact that the act requires reference to the existing laws governing cities of the class embraced within this act for matters of detail and administration does not operate to change the character of the act as a complete act. *State v. Junkin*, 87 Neb. 801.

In *People v. Knopf*, 183 Ill. 410, 415, where the validity of a new revenue law was assailed on the ground that the act was amendatory and violated the provisions of the constitution with reference to amendment of statutes, the

court say: "Under all the circumstances the act should be sustained, if possible, as independent legislation, and not as amendatory in character. The mere fact that portions of the old law are left in force, so that the statutes present the aspect of what has been called patch-work legislation, as they undeniably do, should not render the act void, if it can be said that the act is reasonably complete and sufficient in itself upon distinct branches of the general subject." See, also, *People v. Lorillard,* 135 N. Y. 285; *Fornia v. Wayne Circuit Judge,* 140 Mich. 631; *People v. Mahaney,* 13 Mich. 481.

The case last referred to has been repeatedly cited and approved in this court, and we are satisfied with the principles of law therein announced. We think the act under consideration does not violate the constitutional provision respecting the amendment of statutes.

Relator's next contention is that the act in question violates section 1, art. II of the constitution, providing for the distribution of powers for the government of the state into legislative, executive, and judicial. He argues that, since the provisions of the law do not become effective with reference to cities of over 5,000 inhabitants, except on an affirmative vote of the electors thereof, the act is an attempt on the part of the legislature to delegate legislative powers to a municipality; and that, since the legislature is not authorized to submit to a popular vote of the state the question whether or not an act proposed by it shall become a law, it cannot submit such a question to the electors of a municipality; that by the act the choice of selecting two different forms of government is left to the electors of each city, which choice the legislature has not the power or the right to delegate to the electors of a municipality.

The provision of the constitution referred to by its express terms is concerned only with the government of the state, and does not attempt to limit the legislature as to its power to prescribe the manner in which municipalities or local subdivisions of the state may administer their

local affairs. The constitution committed to the legislature the general power to create, regulate and govern such municipalities and the authority to pass laws providing all the administrative details necessary, except as to a few matters where such powers are expressly limited by its terms. This question has been raised, considered at length, and decided in a number of recent cases in other states where similar acts have been passed, and courts in general have taken the same view. We believe it only necessary to refer to the reasoning in these opinions on this point. *Eckerson v. City of Des Moines*, 137 Ia. 452; *Cole v. Dorr*, 80 Kan. 251; *Bryan v. Voss*, 143 Ky. 422, 136 S. W. 884.

On the general subject of the powers of the legislature to submit to electors of a local subdivision of the state the question whether they shall adopt or reject, as applying to such subdivisions, the provisions of a general law, many cases are cited in 8 Cyc. 840, note 17. In this state, so far as has been brought to our attention, the right of the citizens of a county to vote upon the division of the same, or to vote upon the adoption of the "Herd law," or upon the question as to whether bounties should be paid by the county for the killing of wild animals, has never been questioned. We conclude, therefore, that it was within the power of the legislature by general law to allow the electors of all cities in the same class to adopt or reject the commission plan of government.

It is next contended that the act is unconstitutional for the reason that it is a local and special law, and thereby violates section 15, art. III of the constitution; that, if the electors of one municipality should adopt the commission form of government and other cities of the same class should refuse to adopt that form, the electors would be permitted to do that which the legislature is prohibited from doing, and that thereby various forms of government for municipalities belonging to the same class are made possible. We think the act is not inimical to the constitution for this reason. It is a general act applying to all

cities within the state of over 5,000 inhabitants and operates on all cities alike within the class. It affords to each city within its terms opportunity to select its system of government. The mere fact that the ultimate result may be that some cities of the state may have a different form of government from others does not necessarily make this a special or local law.

In *In re Petition of Cleveland*, 52 N. J. Law, 188, 7 L. R. A. 431, the facts were that an act of the legislature of New Jersey vested in the respective mayors of the cities of the state the power to appoint certain municipal officers in substitution for certain previously existing methods of appointment, and the law was made operative only in cities which elected to accept its provisions. The city of Jersey City accepted the provisions of the act and the mayor thereupon filled the municipal offices. Prior incumbents contested the validity of the statute, among other grounds, for the reason that the act was special and local. The language of the court is so apt that we quote it: "The alleged vice in the law, mainly relied upon to overthrow it, is that it is local and special, and therefore proscribed by our constitutional provision. In this argument it is an obvious and fundamental fact, which must be ever present in mind, if we would not be misled, that the grant of the powers of local government inevitably leads to diversity. The object of delegating powers is to enable local governments to make such diverse laws as they may deem expedient. The grant of such powers implies that diversity is requisite. If uniformity was to be preserved, the legislature would establish an inflexible and uniform code for all localities, leaving nothing optional. If we hold that the fact that diversity arises out of the use or application of a legislative act is destructive of its validity, we must affirm that the constitution of our state, in its present form, absolutely forbids the delegation of powers of local government. Such a proposition, I think, no one will seriously advocate. Uniformity in results cannot co-exist with the right of local self-government until all men

shall be of one mind. No one will assert that an' act is local or special which gives to all the cities of this state the right to establish by ordinance the mode in which their subordinate officers shall be elected. Under such a statute, one city might make the tenure of office a term of years, another during good behaviour, and a third, at the will of the common council. Such diverse results in the execution of the granted power obviously could not outlaw the act of the legislature. The authority granted to all is the same; the dissimilarity is in its use—a dissimilarity inherent in the idea of local government. The uniformity exacted by the constitutional mandate must be sought for, not in the results which flow from the free, unhampered exercise of the granted power of local government, but in the fact that every locality is afforded a like right to adopt and exercise in its own way the same powers which are bestowed upon every other like political body. To the one no privilege must be offered for acceptance which is not extended to the other. The authority given must be the same; it may be executed in a different way, or in the same way, at the option of the recipient. That is the uniformity to which the judicial declarations in the adjudged cases in this state must be referred." See, also, *State v. Holmes*, 68 N. J. Law, 192, 53 Atl. 76. The same question is treated of at length in the leading case of *Eckerson v. City of Des Moines, supra,* where it is held: "The fact that it is possible, or even probable, that some one or more cities may not avail themselves of the provisions of an act granting special powers to the class of cities to which they belong will not affect the uniform application of the law if all who do accept it are to be governed alike. A law which is a complete enactment when it leaves the legislative department is not objectionable as a delegation of the legislative power, because containing a provision that it shall not become operative except upon a vote of the people to whom it is made applicable."

The principles announced and discussed in these decisions are the same as those announced by this court in

*Allan v. Kennard*, 81 Neb. 289.  In that case it is said: "It is settled law in this state, as well as in most others having like constitutional restrictions, that where a law is general and uniform throughout the state, operating alike upon all persons and localities of a class, it is not open to the objection that it is local or special legislation (*State v. Graham*, 16 Neb. 74; *State v. Berka*, 20 Neb. 375; *Van Horn v. State*, 46 Neb. 62; *Livingston L. & B. Ass'n v. Drummond*, 49 Neb. 200), and it is unnecessary to do more than state the principle in this connection.  See, also, *State v. Frank*, 61 Neb. 679." See, also, *Cole v. Dorr*, 80 Kan. 251; 1 Sutherland (Lewis) Statutory Construction (2d ed.) sec. 201, and cases cited.

There is no requirement in the constitution that the details of local government shall be the same in all cities of like population. Cities in the same class so far as population is concerned may and often do have quite different methods of local government in some details of administration.  That which is illegal in one city may be legal in another, depending upon the different ordinances in effect. Moreover, in classification by population the line of differentiation is almost imperceptible.  What essential difference is there to justify placing a city of 10,000 inhabitants in one class and a city of 9,999 inhabitants in another? The real difference becomes obvious only as each city recedes in population from the dividing line, yet, it cannot be successfully contended that acts making classification on such a basis are local or special in their nature.

The remaining objections urged by the relator are answered in the opinions in the cases cited and will not be further considered.

A brief, however, has been filed by counsel appearing as friends of the court, suggesting certain other provisions which it is claimed render the statute unconstitutional. The title of the act is "An act for the government of all cities having, according to the last preceding state or national census, five thousand or more population, and to enable such cities to adopt the provisions of this act called

the 'Commission Plan of City Government.'" It is argued that since the title shows that the act can only apply to cities having 5,000 population, according to the national census of 1910, cities hereafter reaching 5,000 population are not within its terms, which, under the doctrine of *State v. Scott,* 70 Neb. 685, is a violation of section 15, art. III of the constitution. The operation of the act condemned in *State v. Scott, supra,* was, by its terms, limited to counties having a population of 50,000 according to the census of 1900. There were only two counties in the state coming within the class. It was held that, since the act could never apply to any other counties, it was local and special in a matter which the constitution required to be general. By the terms of section 1 of the act under consideration, it is provided that "any city in this state *now or hereafter* having, according to the last officially taken and promulgated state or national census, five thousand or more population, may adopt the provisions of this act," etc., so that the act is not subject to the vice pointed out in the *Scott* case.

It is contended, however, that section 1, in so far as it refers to any census taken hereafter, is void, for the reason that this portion of the act is broader than its title. We are not inclined to take such a narrow view. The title may be said to be ambiguous to a slight extent, but the section immediately following is specific. The title may reasonably be held to apply to cities having, at the time they vote on the adoption of the act, 5,000 population, according to the last preceding census. A title is not expected to specify minutely all the provisions of the act. In *Nebraska Loan & Building Ass'n v. Perkins,* 61 Neb. 254, it is said: "It is not essential that the title chosen by the legislature be the most appropriate; if it indicates the scope and purpose of the act, it is sufficient. *State v. Bemis,* 45 Neb. 724; *In re White,* 33 Neb. 812. Neither is it necessary that the title inform its readers of the specific contents of the bill. If it indicates the subject of the proposed legislation, it meets all essential requirements. It

needs not that it be a complete abstract and epitome of the contents of the bill. If no portion of the bill is foreign to the subject of legislation, as indicated by the title, however general the latter may be, it is in harmony with the constitutional mandate. *Boggs v. Washington County,* 10 Neb. 297; *Hopkins v. Scott,* 38 Neb. 661; *State v. Moore,* 48 Neb. 870." The provision of section 11, art. III of the constitution, should not be given such a narrow and technical construction as to require the title to contain an index to or abstract of the provisions of the bill. *Alperson v. Whalen,* 74 Neb. 680; 3 Neb. Syn. Digest, secs. 132-136, p. 2968. Unless the purpose of the constitution makers to prevent surreptitious legislation has been thwarted, the court will not be warranted in holding that an act of the legislature is void because a better title might have been adopted.

It is next suggested that section 17 of the act violates the provision of the Bill of Rights relative to freedom of speech. Even if this be true and the section is void for that reason, it can be eliminated without affecting in any degree the remainder of the act. It could not have been an inducement to its passage. The views of this court as to the meaning of section 5, art I of the constitution, have been fully expressed in the majority opinion and in the dissenting opinion of the writer in *State v. Junkin,* 85 Neb. 1, 10, and it is unnecessary to repeat them.

Objection is made to sections 5, 7 and 8, with reference to the manner of printing the official ballot, and it is said that these provisions are in violation of the constitutional provision that "all elections shall be free; and there shall be no hindrance or impediment to the right of a qualified voter to exercise the elective franchise." Const., art. I, sec. 22. We do not understand that the act prohibits or prevents any voter from writing the name of any candidate upon the ballot, either at the primary or general election. In fact, as to the primary, it is provided, after stating in what manner the names of candidates shall be placed on the ballot: "In all other respects the general

character of the paper ballot to be used shall be the same as authorized by the 'Australian Ballot Law' of the state." (Sec. 6.) And, as to the city election, it is provided: "In all other respects the general laws in force in any such city respecting the holding and conducting and declaring the result of any such regular or general city election shall apply, so far as the same are applicable and not inconsistent with the provisions of this act." (Sec. 8.) We understand the provision that the only candidates "whose names shall be placed upon the official ballot" (sec. 7) at the city election means that these are the only candidates whose names shall be printed on the official ballot, and we find no prohibition against any voter inserting the names of such other persons as he may desire to vote for.

It is also objected that section 21, which provides for the removal of any incumbent of the office of councilman by means of an election held upon a petition filed by a specified number of voters, is amendatory of prior statutes. It will be observed that the "councilman" who is subject to removal under the provisions of this section is the officer who is provided for by the terms of this act, and that this section does not apply to the holder of any municipal office created by any other statute. Since section 21 does not affect or modify the provisions of prior statutes, it cannot be said to be amendatory of them. In any event, the recall provisions of this section may be eliminated and still the main provisions of the act remain effective, since it cannot have been one of the main inducements to the passage of the act. If the occasion ever arises for a direct attack upon it, and it is pointed out that for other reasons this section violates any of the provisions of the constitution, the court, even though we hold the act is valid, may still consider whether for any reason this section is vulnerable to attack. It may be said, however, that as a general rule offices created by the legislature may be controlled by that body, that the term of officers may be shortened, the office abolished, or changes made in the duties to be performed, without violation to any constitutional provision.

It is also contended that since it is provided, in sub-stance, in section 19, that all general state laws governing the several classes of cities described in the act which are inconsistent with the provisions of this act shall, upon its adoption by any city and the election of officers there-under, be deemed and held to be repealed, and, in section 24, that any city which shall have operated for more than four years under the provisions of the act may abandon its provisions and organization thereunder, and accept the provisions of the general law of the state then appli-cable to such cities by a majority vote at a special election, these provisions are inconsistent with each other; that, if under the provisions of section 19 the general statutes are repealed with respect to such cities, they cannot again be revived and made applicable under the provisions of section 24. Perhaps it is unnecessary to anticipate the contingency that a city which has adopted the commission plan of government will ever desire to return to a govern-ment under the general laws of the state, but we see no difficulty in construing these two sections. It is evident that the legislature intended that the operation of the general laws should be abrogated or suspended so long as the municipality elected to proceed under the commission form and that an absolute repeal was not intended. In construing a statute of doubtful meaning, the rule is to do so, if reasonably possible, so as to carry out the purpose of the legislature, and when this purpose and intention is manifest it will prevail over a seeming conflict in the language. *Flagg v. Flagg,* 39 Neb. 229; *Parker v. Nothomb,* 65 Neb. 315. The meaning must be ascertained from a consideration of all that is said in the act upon the same subject matter. Moreover, since the latter provisions clearly show that it was the intention of the legislature that cities might again resume the former method of gov-ernment, the rule applies that where different portions of the same statute conflict the last words stand. *Van Horn v. State,* 46 Neb. 62.

At the oral argument it was further contended that the

provisions of section 11, vesting in the council "all executive or legislative or judicial powers and duties hitherto held, possessed or exercised under the then existing laws governing any such city, by the mayor or mayor and city council or water commissioners," etc., and providing that such powers, duties, and office shall thereupon cease and determine, also violates the provisions of the constitution. This section, however, expressly excepts from its operation any office or officer in the city named in the state constitution, and city school or school district officers. As we have seen, the legislature is not restricted by the constitution with regard to the creation or termination of municipal offices, and it may provide that the duties heretofore exercised by certain officers may be exercised by others. It is, therefore, within its powers to so enact.

We have not found it necessary to elaborate by an extended course of reasoning the principal grounds upon which our decision rests. The act is, in the features attacked, very similar to the statute of the state of Iowa, which was construed by the supreme court of that state in *Eckerson v. City of Des Moines, supra,* and, while we cannot, for the reason that this act is not identical in several respects with the Iowa act, apply the rule that, where the legislature adopts the statute of another state, the judicial construction which it has already received in such state is also adopted, much of the extended discussion of principles found in the opinion in that case is applicable. So, also, with those stated in *Bryan v. Voss, supra; Cole v. Dorr, supra; Cole v. Tucker,* 164 Mass. 486; *Graham v. Roberts,* 200 Mass. 152; *Orrick v. City of Ft. Worth,* 52 Tex. Civ. App. 308, 114 S. W. 677; *In re Pfahler,* 150 Cal. 71, 88 Pac. 270.

As a whole, the act does not seem to us to be subject to the objections urged, and the respondent was justified in refusing to accept the filing fee. The writ of mandamus is

REFUSED.

REESE, C. J., not sitting.