## Shadrack v. Board of Trustees of the Madisonville Graded Common School District.

(Decided June 4, 1920.)

### Appeal from Hopkins Circuit Court.

1. Schools and School Districts—Act of 1920—Application of to Fourth Class Cities.—In Madisonville, a city of the fourth class, there is a white graded common school embracing the city and some outlying territory, which school was organized under the general law, and is under the control of a board of trustees. There is also in the city of Madisonville a colored common school district that embraces the city and larger outlying territory than the white graded school district, which school is under the control of the county board of education. Under the act of 1920, these two districts must be converted into one, with separate schools for white and colored children, and under the control of one board of education, provided for in the act of 1920.

2. Schools and School Districts—In Cities of the Fourth Class—Boundary of Districts Outside of City.—Where the territory embraced in white and colored schools embraces a city of the fourth class, as well as outlying territory, and the lines of the districts outside of the city do not coincide, the lines under the act of 1920 should be laid off so as to coincide when the schools come under one board.

3. Municipal Corporations—Constitutional Law—Provisions of Act Applicable to Class May Be Left to Cities to Adopt or Reject.—Where a law relating to a class of cities is enacted, the act may

provide that its provisions may be adopted or rejected by any city within the class.

H. F. S. BAILEY for plaintiff.

LAFFOON & WADDILL for defendants.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—
Granting injunction.

Madisonville is a city of the fourth class, and many years ago there was established, under the general law found in sections 4464-4500, of the Kentucky Statutes, a white graded school district, embracing all of the city, as well as some contiguous, outlying territory, and from that time until now there has been conducted, under the general law, a white graded common school district under the control of a board of trustees.

Many years ago, there was also created a colored common school district, embracing the city of Madisonville and contiguous, outlying territory, exceeding the limits of the white graded school district. This colored common school district has for some years been under the control of the board of education of Hopkins county, conducted under the general laws of the state in the same manner as other common school districts.

It will thus be seen that these two districts, all embracing the same territory, except to the extent that the colored district outside of the city takes in more territory than the white district, have been and are being conducted under the general laws of the state by separate boards, the white school being supported by a tax on the property of the white people within the graded school district supplemented by state aid and the colored school being supported by a tax on the property of the colored people within the colored district, supplemented by state aid, as well as funds appropriated for the use of the school by the county board of education.

In 1920, the legislature passed an act, the title of which reads: "An act defining boundaries for school districts, embracing cities of the fourth class, and providing systems of schools in such districts, and creating boards of education for such districts, providing for election thereof, defining their powers and duties, and repealing all laws in conflict therewith."

The first section of this act provides that: "Each city of the fourth class in this state, together with the territory now within its limits, including any territory

which has heretofore been added for school purposes outside the limits of said city and any territory which may be in the future included by any change in the limits of such cities, or such territory as may be added in the manner as hereinafter set out in section 31, shall be and constitute a single school district, and the supervision and government of common schools and common school property therein shall be vested in a board of six trustees to be called and known as the board of education of .................................................., Kentucky. Such board of education shall be a body corporate and shall have the power, by and in said name, to sue and be sued, contract and be contracted with, purchase, receive, hold, and sell property, issue its bonds, and do all things necessary to accomplish the purpose for the attainment of which said school district is organized and succeed to all the property, property rights, and privileges of whatever kind or nature granted and belonging to any previous corporation, board of education, or school district in said city or in which said city was embraced, or officers thereof authorized or empowered by any enactment of the general Assembly of the state to do anything in reference to the public education, provided that all pending suits to which any such previous corporation, board of education, or school district or officers thereof, is a party may be prosecuted to an end in the name of such party. The titles to property previously granted to such city by the United States or this state for common school purposes and the title to all school lands and other property of every kind shall be vested in the board of education created by this act.'' Section 2 provides in part that: ''Every such board of education shall have general and supervising control, government and management of the public schools, including kindergartens, night and normal schools, vocational and high schools as hereinafter provided, and public school property in such city, with the right to use said property to promote public education in such ways as it may deem necessary and proper; shall exercise generally all powers in the administration of the public school system therein, appoint such officers, agents, and employes as it may deem necessary and proper; and fix their compensation and term of office.''

Sections 3 to 17, inclusive, and sections 19 to 31, inclusive, relate to matters not pertinent in the consideration of the questions raised in this case.

Section 18 reads: "The board of education shall provide, maintain, and support separate schools, and provide for the education of all colored children who are *bona fide* residents of said district and entitled to free tuition in the common schools. Said colored school or children shall be entitled to the same benefits, be governed and controlled by the same rules and regulations, and be subject to the same restrictions as the schools herein provided for white children. Provided, however, that where any city of the fourth class has heretofore organized a system of free graded schools for the education of both white and colored children of said cities under and by virtue of a charter of cities of the fourth class, and managed and controlled by the board of education, and has, by ordinance passed by its general council, separated said systems of graded free schools into a graded free white common school for the white people of said district and into a graded free colored common school for the colored people of said district; or where such separate schools have existed under the general laws of the state of Kentucky or special acts under separate boards, or where the board of council of any district embracing a fourth class city shall, by ordinance, provide for a separate system of schools under this law under different boards, said schools shall be governed and controlled—the white schools by a white board of education, and the colored school by a colored board of education to be elected on separate ballots as provided under section seven of this act. But where such provision is not made by ordinance of the board of council, or where such separate boards have not heretofore existed, both of such systems of schools shall be under one board of education. In cities or districts coming under the provisions of this act, where two boards of education, white and colored, have been maintained the board of council of the city embraced in such districts, may, by ordinance, abolish one of said boards, and by its ordinance provide for one board of education to be elected and qualified as is herein provided and in that event there shall be but one board of education in such district."

Section 32 reads: "The general school laws of this state and all laws and parts of laws applicable to the general system of public schools in cities of the fourth class not inconsistent herewith shall be and remain in full force and effect in such city or district, and all laws

in conflict with the provisions of this act are hereby repealed.''

This act of 1920, by virtue of an emergency clause, went into effect on March 13, 1920, and on May 12, 1920, the plaintiff, Shadrack, brought this suit in the Hopkins circuit court against the defendants, the Board of Trustees of the Madisonville Graded Common School District, alleging in his petition that he was a citizen and taxpayer in the city of Madisonville; that the Madisonville graded common school district was established by a vote of the white voters of the city, and thereafter enlarged so as to take in contiguous, outlying territory; that the city did not establish or maintain a graded school or any school under the provisions of its charter, either for white or colored people; that the colored school is in a colored district embracing the city and contiguous territory larger than the white district, and is a common school district under the control of the county board of education; that there are in the white district 865 children within school years and in the colored district 412, colored children within school years; that the value of the taxable property of the colored people in the colored district is $71,693.00, and the value of the taxable property of the white people in the white district is $2,434,867.00; that the white school district has erected, by means of a bonded indebtedness, a school building, which bonded indebtedness is yet unpaid.

He further averred that the trustees of the white school are refusing to recognize or act under the act of 1920, and are ignoring the provisions of this act by levying and collecting taxes and conducting the white school in the same manner that it was conducted before the act of 1920 went into effect. He prayed that they be compelled, by injunction, to recognize the validity of the act of 1920, and proceed thereunder.

The lower court refused to grant the injunction prayed for, upon the ground that the act of 1920 was not applicable to either of these districts, and the case comes before me on a motion to grant the injunction refused by the judge of the lower court.

It was the manifest purpose of the act of 1920 to place the school system, both white and colored in cities of the fourth class, under the control of the board of education provided for in section 1 of the act. The result of this change would be to put the white graded

school, now under the control of the board of trustees, under the control of the new board of education, and to put the colored common school now under the control of the county board of education under the control of the new board of education.

If these two school districts were made into one, as provided in the act of 1920, the further result would be that all the taxes collected in the district would be appropriated to the maintenance of both the white and colored schools in proportion to the number of white and colored school children, except that the tax levy for the purpose of paying the bonded indebtedness of the white graded school district would be appropriated to that purpose.

In cities of the first, second and third classes, the scheme set forth in the act of 1920 has been in operation for some years, and it was the purpose of the legislature in this new act to place the school systems in cities of the fourth class on the same general basis as the school system in the cities of first, second and third classes.

With the wisdom of this legislation we have nothing to do, although we might say in passing that the plan proposed to be applied to cities of the fourth class has worked well in cities of the first, second and third classes, in which the number of colored school children as compared to the number of white school children, and the value of the property owned by the colored people in proportion to the value of that owned by the white people, is about the same as it is in the city of Madisonville.

It is insisted by counsel for defendants that as the lines of the districts outside of the city do not coincide, it would create much confusion if the two districts were combined into one and put in charge of one board, but we do not regard as serious the circumstance that the lines of the colored district outside of the city take in more territory than is embraced in the white school district, because the lines of the colored district outside of the city can be reduced to correspond with the lines of the white district, or the lines of the white district can be extended to coincide with the lines of the colored district, and either one of these plans may be, under the act, and should be adopted.

This brings me to a consideration of the question whether the act of 1920 is applicable to the conditions existing in the city of Madisonville. The act, with the

exception of section 18, which is somewhat obscure, seems to afford a practicable and workable scheme under which colored and white schools may be separately maintained, yet be under the control and management of one board, although it is likely that when certain sections or provisions of the act are attempted to be applied to states of fact that may come up, differences of opinion as to their meaning may arise. But this is a condition that comes up frequently and must be dealt with as it appears.

It seems to have been the purpose of section 18 to except from the operation of this act certain cities of the fourth class in which the conditions described in the section exist, or rather to leave it optional with certain cities to accept the provisions of the act, or to continue schools under the system in force before this act was adopted.

We doubt very much if it would be competent for the legislature in an act dealing with any class of cities, or the conditions existing in any class, to arbitrarily except from the operation of the act some cities in the class dealt with, although it has been held that it may be left to the people in the cities of a class to put in effect or not as they think proper, the legislation applicable to all the cities of the class.

An example of this kind of legislation is found in the act providing for a commission form of government. This act was upheld in Bryan v. Voss, 143 Ky. 422, the court saying in effect that it was permissible for the legislature to enact a law applicable to a class of cities, but leave to each city in the class the option of determining for itself whether it would adopt the act or continue to manage its affairs under the laws in force previous to the adoption of the act.

Under the authority of this case, it seems that it would be competent for the legislature to enact a law applicable to all the cities in a named class, giving to each city, however, the right to elect for itself whether it would or would not adopt the provisions of the act, and this apparently is what was attempted to be done in section 18.

It is provided in this section "that where a city of the fourth class has heretofore organized a system of free graded schools for the education of both white and colored children of said cities under and by virtue of a charter of cities of the fourth class and managed and

controlled by the board of education, and has, by ordinance passed by its general council, separated said system of graded free schools into a graded free white common school for the white people of said district and into a graded free colored common school for the colored people of said district; . . . said schools shall be governed and controlled—the white schools by a white board of education, and the colored school by a colored board of education to be elected on separate ballots as provided under section seven of this act."

It is manifest that this exception does not apply to Madisonville, because neither the white nor colored schools in that city were organized under or have operated under the charter of the city or ordinances adopted by the board of council  The third exception mentioned in the section exists "where the board of council of any district embracing fourth class cities shall by ordinance provide for a separate system of schools under this law under different boards." But this exception is plainly not applicable, because the board of council of the city of Madisonville has never undertaken by ordinance or otherwise to organize, regulate or control either the white or colored schools.

The third exception in this section relates to "such separate schools as have existed under the general laws of the state of Kentucky, or special acts under separate boards." But this exception is not applicable because as shown in other parts of section 18 it contemplates the existence of separate schools under separate boards, either of which boards the council might abolish and make provision for one board to have charge of both schools.

We think this exception must be limited to separate schools operating under boards appointed by the council or elected under ordinances, and that it can have no application to a state of case such as that existing in the city of Madisonville, where the council had nothing whatever to do with the creation of the boards or any control over them, or the schools in their charge.

I am, therefore, of the opinion that the act of 1920 is applicable to these districts, and that the board of trustees of the white graded school must operate under it.  Therefore, the motion to grant the injunction refused by Judge Henderson is sustained. The whole court, except Judge Clarke, who was absent, considered this matter with me and concur in what has been written and the conclusion reached.