## Allen et al., for Use and Benefit of City of Middlesboro, Ky., v. Hollingsworth et al.

(Decided Jan. 17, 1933.)

MARTIN T. KELLY and CHAS. E. HERD for appellants.

WM. LOW and J. E. SAMPSON for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

This is a taxpayers' suit to recover into the city treasury money alleged to have been illegally collected by the members of the board of commissioners of the city of Middlesboro. It presents a novel and important question with respect to the limitations on the

power of the board of commissioners of cities of the third class, by reason of the referendum under which that method of government was adopted.

By a plebiscite held under the authority of the General Assembly, expressed in section 3480b-1, et seq., of the Statutes, the citizens of Middlesboro in 1922 chose to become organized and to be governed under the charter of the commission plan of government. The form of the question submitted on the referendum to the electorate was that set out in section 3480b-3 of the Statutes, the material portion of which is as follows:

"Are you in favor of the organization and government of the City of Middlesboro under the provisions of (the statute identified) and under which the members of the Board of Commissioners shall receive a salary of Nine Hundred Dollars ($900.00) per year?"

This was in accordance with the petition calling for the submission as provided in section 3480b-11. The point is presented whether thereafter the salary of the members of the board of commissioners could be increased by an ordinance of that body.

The mayor is one of the three members of the board of commissioners. Section 3480b-12. On November 4, 1929, the board enacted an ordinance raising the salary of the mayor from $900 to $2,400 a year. However, in view of the limitations of section 3480b-11 of the Statutes, of a maximum salary of $2,200, the mayor was paid only that sum instead of the amount fixed by the ordinance. On November 24, 1929, it was ordained by the board of commissioners that the other two members "shall be allowed the sum of $25 each per month for clerical assistance to promote the work of their respective departments, said sum to be paid to said commissioners monthly as the salaries of said commissioners are paid." The amount stipulated in the ordinance was thereafter paid to them, and it is alleged that it was as compensation for their own services. The amounts received by each in excess of $900 per annum were set out, and judgment asked against them therefor, as well as an injunction restraining further payment by the city treasurer. The court sustained a demurrer to the petition, and the taxpayers appeal.

The initiative and referendum scheme of government does not obtain in this state to the same extent

it does in some others. This power of direct legislation by the people, however, has been given, or shall we say restored, in relation to several subjects other than that which allows a choice by the electorate of the respective classes of cities as between the councilmanic and the commission forms of government. The same choice is given counties as between the fiscal court and the commission plan. Section 1847, Statutes. Other things which must be or may be submitted to the vote of the people for adoption or rejection are: An act of the Legislature classifying property for taxation (section 171, Constitution); bond issues and taxes for their liquidation (section 157 Constitution, sections 1872, 1881a-1, 4307, etc., Statutes); the establishment of consolidated school districts and levying of a special tax (section 4426a, et seq., Statutes); removal of county seats (section 63, Constitution, and section 915, Statutes); special road tax levies (section 157a, Constitution, and section 4645m-1, Statutes); changing of county boundaries (section 63, Constitution, and section 919, Statutes); the purchase of public utilities (section 3480d-1, Statutes); the sale thereof (section 2741l-21, Statutes); and for the establishment of municipal bands in certain cities (section 2741j-1, Statutes). There are some other questions of a special nature which may be submitted under current law, and our memories go back to the days of local option and the freeing of turnpikes.

When the will of the electorate has been expressed on these things, it must be given full force and effect. Most of the statutes referred to require action on the part of some official body to put them into effect, after an affirmative vote in favor of the proposition has been received, which is generally regarded as of a ministerial character. In recognition of the supremacy of the voice of the people, it has been held that those officers may be compelled to put the schemes or laws thus adopted into effect where they are not automatically operative. Thus it was held in Houston v. Boltz, 196 Ky. 640, 185 S. W. 76, that mandamus will lie to compel members of a fiscal court to perform their duty to issue bonds authorized at an election. But in the matter of changing the form of municipal or county government by local plebiscite, the General Assembly has already set up the machinery, and when the result has been established the law or charter becomes self-operating,

according to its terms, and such government is automatically established. Bryan v. Voss, 143 Ky. 422, 136 S. W. 884; Jones v. Cassidy, Mayor, 154 Ky. 748, 159 S. W. 562.

Apart from restraints of the organic law, the Legislature has plenary powers in respect to the establishment and regulation of the government of municipalities, and such divisions of government possess only those powers that the state, through the Legislature, has conferred upon them, expressly or impliedly, and those granted powers may be enlarged or diminished in the discretion of the superior body, for the municipalities are derivative creations. Walker v. City of Richmond, 173 Ky. 26, 189 S. W. 1122, Ann. Cas. 1918E, 1084; City of Morganfield v. Wathen, 202 Ky. 641, 261 S. W. 12; Barrow v. Bradley, Mayor, 190 Ky. 480, 227 S. W. 1016. Doubt concerning the existence of a particular power will be resolved against its existence. Board of Education v. Scott, 189 Ky. 225, 224 S. W. 680. The systems of government conferred upon municipalities in this state has been through the enactment of charters for the six classes of municipalities into which cities and towns have been placed. In these charters, powers in respect to many things have been delegated to the legislative bodies of the cities. Bryan v. Voss, supra; Barrow v. Bradley, Mayor, supra; Jones v. Russell, 224 Ky. 390, 6 S. W. (2d) 460. But those charters are subject to the will of the Legislature. Boyd v. Chambers, 78 Ky. 140; City of Owensboro v. Board of Trustees, 210 Ky. 482, 276 S. W. 143. In the absence of any constitutional provision to the contrary, the state Legislature may confer the power of referendum on a municipality and prescribe the terms on which it may be exercised. 43 C. J. 584. The validity of the laws permitting the alternative choice of charters has been sustained by this court. Clarke v. Rogers & Company, 81 Ky. 43, 4 Ky. Law Rep. 929; Burnside v. Lincoln County Court, 86 Ky. 423, 6 S. W. 276, 9 Ky. Law Rep. 635; Bryan v. Voss, supra.

In the charters of cities operating under this form, broad powers are delegated to the boards of commissioners, but even as the Legislature of the state is controlled by the Constitution, so too is the legislative body of a subdivision of government controlled by its charter. In these several charters we note different

provisions in respect to the salaries of the commissioners. We turn first to others than that with which we are particularly concerned. In those governing counties containing cities of the first class the salaries are definitely fixed by the statute (section 1851b-7), while in other counties the matter of compensation within specified minimum and maximum amounts is left open (section 1847). There seems to be no alternative charter for cities of the first class; but the mayor's salary is fixed by the statute at $5,000 (section 2800). For cities of the second class the salary of the mayor is fixed at $4,000, and the other two commissioners at $3,600 (sections 3235c-10, 3235c-11), except where the city manager form of government has been adopted which is another alternative form allowed upon a referendum (Ky. Stats. Supp. 1930, sec. 3235dd-16), when salaries of all the commissioners are fixed at $1,500, but it is provided that the commissioners may reduce their salaries (section 3235dd-28). The matter of salaries is not submitted to the electorate in the referendum. For cities of the fourth class, the voters, in adopting the form of government, fix the salary for the first term of office under the act, but it is provided that thereafter the salaries may be changed and fixed within limits by the outgoing commissioners, provided it is done at least sixty days before the primary election for selecting nominees for the succeeding term (section 3606b-1 et seq.). In cities of the fifth and sixth classes, the salaries are to be fixed by the outgoing body within limits fixed by statute (section 2741f-1 et seq.).

The law governing the third class cities, with which we are presently concerned, is different from the others in the respect indicated. Except for the first term in cities of the fourth class, in none of the other statutes is the matter incorporated in the submission to the people. As to third class cities alone is there silence as to any other method or authority to establish or change the salaries than that fixed in the petition calling for the election and contained in the prescribed form for submitting to the citizens the question of adopting the plan.

It is provided that in the board of commissioners "shall be vested all legislative and administrative power of the city, save as herein otherwise provided." The fixing of compensation of the members of the board

is "otherwise provided" for. It is, by the vote of the people, within the minimum of $500 and maximum of $2,200.

Though this method of fixing a salary is unique among our laws, it is employed quite frequently elsewhere. Thus in Colorado, in the smaller cities, it is provided that the officers "shall not receive any compensation for services rendered by them as such Mayor, Aldermen or Trustees unless the question of paying such Mayor, Aldermen, or Trustees for their services shall first be submitted to the local voters of such city or town and unless a majority of those voting thereon shall vote in favor thereof." The question of increasing the salaries of officers in some of the cities of Maryland may be submitted to a vote of the people. And in New Jersey there are a number of conditional acts of this kind. One refers to the creation of increasing compensation of policemen and firemen. In Missouri, the people may decide whether or not pensions shall be paid to policemen who may have sustained injuries while on public duty. So, too, in New York the matter of paying individual teachers who have taught for a period of twenty-five years or more out of a pension fund may be submitted to the people. "The Referendum Initiative and Recall in America" by Oberholtzer, page 268.

It is a general rule of construction of municipal charters that where a particular mode of exercising a power is granted by statute, other modes as by implication are deemed to have been excluded. Johnston v. Louisville, 74 Ky. (11 Bush) 527. As is stated in Bruner v. Jefferson County Fiscal Court, 239 Ky. 613, 40 S. W. (2d) 271, 273:

> "Implied restraints, as well as implied powers, must be respected. Powers not conferred are just as plainly prohibited as though expressly forbidden, and when powers are conferred to be exercised in a specified manner, there is an implied restriction upon the exercise of that power in excess of the grant, or in a manner different from that permitted. Every positive direction to a subordinate tribunal contains an implication against everything contrary to it, or which would tend to frustrate or disappoint the purpose of such direction."

When the electorate has accepted the alternative system of government and has chosen to live under that form, and has voted the compensation to be paid the members of the board of commissioners, that charter containing that compensation becomes effective, and the amount is a component part of it. The salary is thereby just as definitely stipulated as are the particular salaries specified by the Legislature in other charters. It is certain that the municipality can enact no ordinance which violates its charter. City of Louisville v. Parsons, 150 Ky. 420, 150 S. W. 498.

Municipal councils and substituted bodies represent the inhabitants in their corporate capacity. Poggel v. Louisville R. Co., 225 Ky. 784, 10 S. W. (2d) 305. They are but the servants of the people and when the people register their will in respect to things directly submitted to them, that will is controlling. We have several illustrations of this. A tax voted for a special purpose can be used for no other. Board of Education of Covington v. Board of Trustees of Public Library, 113 Ky. 234, 68 S. W. 10, 24 Ky. Law Rep. 98; Hughes v. Eison, 190 Ky. 661, 228 S. W. 676. Where roads to be built with the proceeds of a proposed bond issue have been previously designated by the fiscal court and the bonds have been authorized by the electorate on the faith of that designation, the fiscal court has no power thereafter to repeal or amend its order, and the proceeds can be used for no other road or purpose. Scott v. Forrest, 174 Ky. 673, 192 S. W. 691; Smith v. Livingston County, 195 Ky. 382, 242 S. W. 612. Where an ordinance submitting the question of a bond issue to the voters of a city contained a provision with respect to refunding the debt, which provision, while not necessary under the statute authorizing the submission, was not prohibited by it or was not otherwise unlawful, it was held, in Percival v. City of Covington, 191 Ky. 337, 230 S. W. 300, that the board of commissioners of the city were bound to include the provision in the bonds, because that was a part of the proposition assented to by the citizens. The decision was rested upon Skinner v. City of Santa Rosa, 107 Cal. 464, 40 P. 742, 29 L. R. A. 512, and Lawson v. Kanawha County Court, 80 W. Va. 612, 92 S. E. 786, holding that city councils are bound to observe every provision of the submission of the question of bond issues whether required by statute

or not, upon the theory that to hold otherwise would open the door to fraudulent submissions and for obtaining without fraud a grant of power that might otherwise have been denied.

Looking for specific authority in relation to referendum acts of general operation or concerning municipal legislation along other lines, it is found that in order to render the plan of referendum effective, the legislative power of the city council is commonly restricted by the express provision that no ordinance or amendment to an ordinance adopted by the electors shall be repealed or amended by the council. "In such cases an ordinance or amendment thereto adopted by a vote of the electorate can be repealed or amended only in the same manner." McQuillen on Municipal Corporations, sec. 865. Such specific limitations on the power of the board of commissioners is not made by the statute under consideration, but we think the restriction is there by implication. Such is the rationale of the decisions we have cited. The fixing of salaries was no less the act of the people than the establishment of the form of government by the same vote.

By the terms of the Duluth charter an ordinance was automatically suspended for thirty days after publication, during which period a petition invoking a provision for a referendum to the people was filed, as is authorized by the charter. But the council had authority to repeal the ordinance during the intervening period, and thereby avoid the submission. It did that. Then it enacted another ordinance similar to the first. It was declared that the council might not give life to a dead ordinance by passing it over again or by passing one in all essentials like it, because to permit that to be done would be to nullify the referendum provisions of the charter. State ex rel. Megnella v. Meining, 133 Minn. 98, 157 N. W. 991.

The only case we have found more directly in point is Stetson v. City of Seattle, 74 Wash. 606, 134 P. 494, 495, holding that where an ordinance was adopted by the council and ratified by the referendum vote of the people which established the hours of labor and the organization of the city fire department, that ordinance could not be repealed or amended except by the same procedure and by another vote of the people. It does not appear that the charter of the city which author-

ized the referendum expressly so provided. It is said in the course of the opinion:

"It is urged that the legislative powers of the city are vested primarily in the council and mayor. This is true in a sense, but not entirely so. Where the principle of direct legislation has been adopted, the legislative power is primarily in the people, and the old rule that the legislative body has primary power must be qualified. It is primary, and at the same time it is a permissive power—a power subject to dictation and to control."

The argument is made in behalf of the appellees that the salary established by the affirmative vote of the people was intended to apply only to the members serving the first term after the form of government was established, since there is no provision for submitting the matter of changing the salary to the electorate. Neither is there specific provision for resubmitting the question of going back to the councilmanic system of government, such as may be found in some of the other charters. Whether that privilege or power exists or whether the salary might be thus changed are questions not now before us. But see State ex rel. Richards v. Whisman, 36 S. D. 260, 154 N. W. 707, L. R. A. 1917B, 1, and 19 R. C. L. 732.

Had the Legislature intended that the board of commissioners could subsequently change the salary, it doubtless would have given it the express power, as it did to such boards in cities of the fourth class, as above stated. The absence of such provision is significant. Certainly, under the reasoning and the authorities above set forth, the court cannot hold otherwise than that the city commissioners did not have the power to increase their compensation, however much it may have been deserved. Hence, the petition as supplemented by a stipulation stated a cause of action and the demurrer should have been overruled.

The record is not as complete and definite as it might be. The stipulation just adverted to states that it is "for the purposes of the demurrer" and is to be considered as a part of the petition. It set up the ordinances and made some corrections in the petition. It also states that by a resolution, adopted in January, 1928 (which was long before the subject-matter of the

822

suit came into existence), the city had employed Mr. Hollingsworth, the present mayor, as the assistant treasurer of the city, and that he had since then performed the services of the treasurer under another man who bore that title, but who has been paid a nominal salary only. The argument is made that the additional salary allowed the mayor by the ordinance involved was for this service. There is nothing in the record to support it. The petition also, in general terms, and as conclusions of the pleader, undertakes to charge that every member of the board of commissioners had voted to raise his own salary. But it does not become necessary to pass upon the sufficiency of these allegations. However, it may be observed that the peculiar language of the ordinance with respect to the $25 allowed monthly to the commissioner of public safety and to the commissioner of public works may bring about an issue as to whether these gentlemen retained those sums for their own services, or paid the money out for clerical assistance.

The judgment is reversed for consistent proceedings.